## A07A1372. FOX RUN PROPERTIES, LLC v. MURRAY.
(654 SE2d 676)

BERNES, Judge.

In this contract dispute involving the sale of real property, the trial court denied Fox Run Properties, LLC's efforts to withdraw its admissions following a failure to timely respond to discovery and subsequently granted summary judgment and a decree of specific performance to James M. Murray. The trial court in turn denied summary judgment to Fox Run. Fox Run appeals, arguing that the trial court abused its discretion in refusing to allow Fox Run to withdraw its admissions, in granting summary judgment to Murray, and in denying summary judgment to Fox Run. We find no error and affirm.

On appeal from a summary judgment order, we conduct a de novo review of the evidence. *Miller v. Coleman*, 284 Ga. App. 300 (643 SE2d 797) (2007). The record reflects that on May 5, 2004, Murray and Fox Run executed a Lot/Land Purchase and Sale Agreement ("Agreement") in which Murray agreed to purchase 18 lots in the first phase of the Fox Run Subdivision, located in Glynn County. At the time the Agreement was executed, the subdivision was still in the preliminary development phase. Pursuant to the terms of the Agreement, the purchase price for the subject lots was $862,200, and closing was to occur within 30 days of final plat approval.

The Agreement provided that "no modification . . . of this Agreement shall be binding unless signed by all parties to this Agreement." It also contained a special stipulation that read, "In the event that a lot is not buildable[,] [Murray] may chose [sic] another lot of equal value." Attached as Exhibit B to the Agreement was a document titled "Price list for Fox Run Subdivision, Phase I," which listed the lots available for purchase and their respective listing prices. That document included language that "[p]rices [are] subject to change without notice." Both parties initialed the bottom of the exhibit.

In April 2005, Fox Run notified Murray that it had "decided to unilaterally increase the sales prices of the lots" pursuant to the

language set forth in Exhibit B, and attached a new price list that increased the purchase amount to nearly $1.5 million. Murray rejected the proposed price increase.

The final plat of the subdivision was approved in November 2005, although Fox Run did not notify Murray of the development. Nonetheless, after learning of the approval, Murray notified Fox Run on December 2, 2005 that he was "ready to perform and . . . prepared to close" pursuant to the terms of the original Agreement, and requested a closing date. When a date was not forthcoming, Murray scheduled the closing to take place on December 14, 2005. Fox Run did not attend the closing.

Murray filed a complaint for breach of contract in which he sought specific performance of the terms of the Agreement. Fox Run moved for summary judgment on Murray's claims. Murray then served Fox Run with discovery, including several requests for admission, which it failed to timely answer, resulting in the requests being deemed admitted as a matter of law. See OCGA § 9-11-36 (a) (2). Fox Run moved the court to withdraw its admissions, but the trial court denied the motion. See OCGA § 9-11-36 (b). Murray then moved for summary judgment.

The trial court granted Murray's motion for summary judgment and held that he was entitled to a decree of specific performance. The trial court also denied summary judgment to Fox Run. This appeal ensued.

1. Fox Run argues that the trial court erred in denying its motion to withdraw admissions. We disagree.

It is well settled that a party's failure to timely respond to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests. OCGA § 9-11-36 (b); *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327, 327-330 (1) (486 SE2d 810) (1997); *Ledford v. Darter*, 260 Ga. App. 585, 587 (1) (580 SE2d 317) (2003). This is true even if the requested admissions require opinions or conclusions of law, so long as the legal conclusions relate to the facts of the case. *G. H. Bass*, 268 Ga. at 329 (1). As our Supreme Court has stated, "[t]he language in OCGA § 9-11-36 (a) is clear, unambiguous, and unequivocal and means just what it says. One must comply strictly and literally with the terms of the statute upon the peril of having his response construed to be an admission." (Citations and punctuation omitted.) Id. at 331 (2). Thus, matters deemed admitted under this statute become "solemn admission[s] in judicio [and are] conclusive as a matter of law on the matter[s] stated and cannot be contradicted by other evidence unless [the admissions are] withdrawn or amended on formal motion." (Citation and footnote omitted.) *Mays v. Ed Voyles Chrysler-Plymouth*, 255 Ga. App. 357, 358 (1) (565 SE2d 515) (2002). See

*Vaughn v. Metro. Property & Cas. Ins. Co.*, 260 Ga. App. 573, 574-575 (3) (580 SE2d 323) (2003).

After a matter has been deemed admitted by operation of law, the trial court may, in its discretion, permit a party to withdraw an admission if the court determines that (1) the presentation of the merits will be subserved by the withdrawal, and (2) the party obtaining the admission fails to satisfy the court that withdrawal will prejudice him in maintaining his action or defense on the merits. OCGA § 9-11-36 (b); *G. H. Bass*, 268 Ga. at 330 (1). The court need not consider the second prong of the test if the party seeking to withdraw admissions fails to establish the first prong, which "is not perfunctorily satisfied." *Intersouth Properties v. Contractor Exchange*, 199 Ga. App. 726, 727-728 (1) (405 SE2d 764) (1991). We will not disturb the trial court's ruling on a motion to withdraw admissions absent a showing of abuse of discretion. *Ledford*, 260 Ga. App. at 587 (1).

In the instant case, Fox Run admitted the following: (1) Fox Run had entered into a contract for the sale of 18 lots to Murray for a purchase price of $862,200; (2) Exhibit B of the Agreement had been originally prepared as sales literature for prospective buyers as a means to determine prices over the uncertain period of time that it might take to sell the lots; (3) Exhibit B was attached to the contract for the purpose of identifying how the original purchase price of $862,200 was determined and which lot numbers Murray was purchasing and the price of each lot; and (4) Murray informed Fox Run that he was able and willing to consummate the contract and purchase the property but Fox Run failed to appear at the scheduled closing. Significantly, Fox Run also admitted that because Murray was agreeing to purchase all 18 of the remaining lots shown on Exhibit B and thereby eliminating the uncertainty of time in which the lots might be sold to prospective buyers, the language "prices subject to change without notice" did not apply to Murray. Fox Run further admitted that it breached the contract by attempting to unilaterally increase the sales price of the contract, and then again by refusing to comply with the terms of the contract to convey the property to Murray.

We agree with Fox Run that the conduct of its attorneys did not warrant the trial court's denial of its motion to withdraw. This, however, is not the relevant inquiry. See *Turner v. Mize*, 280 Ga. App. 256, 258 (1) (633 SE2d 641) (2006); *Intersouth Properties*, 199 Ga. App. at 728 (1). Rather, in order to show that the presentation of the merits of this case would be subserved by the withdrawal, Fox Run was required to establish that "the admitted requests either could have been refuted on trial of the issues by admissible evidence having a modicum of credibility or that the admitted requests were incredible on their face; and that the denials being tendered to the court

with the motion to withdraw had not been offered solely for purposes of delay." *Whitemarsh Contractors v. Wells*, 249 Ga. 194, 195 (288 SE2d 198) (1982); *Intersouth Properties*, 199 Ga. App. at 728 (1). This Fox Run has failed to do.

In support of its motion to withdraw, Fox Run relied on the affidavit of Robert Blake, the principal of Fox Run, which it had filed in conjunction with its motion for summary judgment. In his affidavit, Blake stated that "Murray expressly agreed to this provision granting Fox Run Properties, LLC authority to modify the purchase price without notice, as evidenced by his initials which appear on Exhibit B of the Agreement," which, in turn, authorized him to unilaterally increase the purchase price prior to the closing date. Although this assertion was arguably factually sufficient to overcome the admissions, it contradicted Blake's response to an interrogatory, in which he stated that the language "prices are subject to change without notice" in Exhibit B was limited to the circumstance where there was "an increase in the market value of the lots, [in the event] the parties were unable to close on the Subject Property by scheduled closing date." It is undisputed that Murray was ready and willing to close on the scheduled closing date. As such, Blake's statements are inconsistent: in his affidavit, Blake averred that his ability to revise the price was unconstrained, but in his interrogatory response, he averred that it was constrained. The trial court was authorized to construe his inconsistent statements against him, absent a reasonable explanation to explain the contradiction. Cf. *NationsBank v. Peavy*, 227 Ga. App. 137, 139 (3) (488 SE2d 699) (1997); *Kersey v. United States Shoe Corp.*, 211 Ga. App. 655, 657 (440 SE2d 250) (1994); *Bailey v. Chase Third Century Leasing Co.*, 211 Ga. App. 60, 62 (2) (438 SE2d 172) (1993). Based on these inconsistencies, the trial court was further authorized to find that Blake lacked credibility and that the admissions were not false.[1] Moreover, Blake's contention that the parties expressly agreed to give Fox Run the authority to unilaterally increase the price without notice would vitiate the Agreement, casting further doubt on the veracity of Blake's assertions. See *Burns v. Pugmire*, 194 Ga. App. 898, 899 (1) (392 SE2d 62) (1990). Under these circumstances, we cannot conclude that the trial court abused its discretion in concluding that Fox Run did not present credible evidence to refute the admissions. See *Turner*, 280 Ga. App. at 257-258 (1); *Intersouth Properties*, 199 Ga. App. at 728 (1). See also *Ledford*, 260 Ga. App. at 587-588 (1). Compare *Rowland v. Tsay*, 213

---

[1] We note that although the depositions were not before the trial court when the case was originally presented to it, there was additional contradictory testimony in Blake's deposition testimony.

Ga. App. 679, 681 (1) (445 SE2d 822) (1994) ("[A plaintiff] has no right to a judgment based on *false* admissions effected merely because [a defendant] was late in answering the requests for admission, for such false admissions do not subserve the merits.") (citation and punctuation omitted; emphasis in original); *Bailey*, 211 Ga. App. at 61-62 (1) (trial court abused its discretion by denying a motion to withdraw admissions in the face of a sworn affidavit and other admissible evidence that cast doubt on the veracity of the admissions); *Johnson v. City Wide Cab*, 205 Ga. App. 502, 502-503 (1) (422 SE2d 912) (1992) (grant of withdrawal proper when the admissions were contradicted by sworn, credible evidence tending to undermine a critical element of the plaintiff's claim).

2. (a) Fox Run next contends that the trial court erred in granting Murray summary judgment on the breach of contract claim because, it argues, the Agreement either authorized Fox Run to unilaterally change the price of the lots or, alternatively, the entire Agreement was rendered unenforceable by the indefinite price term. Again, we disagree.

Fox Run's admissions set forth above in and of themselves warranted a grant of summary judgment in favor of Murray on the breach of contract claim. Read in conjunction with the Agreement, the admissions demonstrate not only the intent of the parties at the time of its execution, thereby alleviating any alleged uncertainty as to the price term, but also affirmatively establish that Fox Run breached the Agreement by refusing to sell the lots to Murray for the agreed upon price. Accordingly, no genuine issue of material fact exists as to Fox Run's breach of the Agreement.[2] See *Brown v. Morton*, 274 Ga. App. 208, 210-211 (1), (2) (617 SE2d 198) (2005) (using admissions that the defendants conspired to and successfully entered into a contract with plaintiff that they did not intend to perform as the basis for a grant of summary judgment to plaintiff on conspiracy and fraud claims); *Mays*, 255 Ga. App. at 358-359 (1) (granting summary judgment to defendant on plaintiff's breach of contract claim based upon plaintiff's unwithdrawn admission that no contract existed between him and defendant). See also *Turner*, 280 Ga. App. at 259 (2); *Le v. Shepherd's Pond Homeowners Assn.*, 280 Ga. App. 36, 37-38 (1) (633 SE2d 363) (2006).

---

[2] The trial court did not base its ruling on Fox Run's admissions, but rather on its construction of the Agreement. Although our reasoning differs from the trial court's, we will nonetheless affirm a judgment that is right for any reason. *Harris-Jackson v. City of Cochran*, 287 Ga. App. 722, 724 (652 SE2d 607) (2007).

The record before this Court gives no indication that Fox Run's admissions were merely false admissions. Under these circumstances, the trial court did not err in granting summary judgment to Murray on the breach of contract claim.

(b) Fox Run also contends that the trial court erred in holding that Murray was entitled to a decree of summary judgment because Murray allegedly failed to make a formal tender of the purchase price.[3]

It is well established that "[s]o long as the contract for the sale of land is in writing, signed by the other part[y], is certain and fair, for adequate consideration, and capable of being performed, a court of equity can decree that it be specifically performed." (Citations and punctuation omitted.) *Bourke v. Webb*, 277 Ga. App. 749, 751 (1) (627 SE2d 454) (2006). See *Plemons v. Belcher*, 231 Ga. 814, 815-816 (204 SE2d 120) (1974). Fox Run correctly notes that, in order to be entitled to a decree of specific performance, a purchaser must make an unconditional tender of the purchase money due. *Jolly v. Jones*, 201 Ga. 532 (1) (40 SE2d 558) (1946); *Nowlin v. Davis*, 245 Ga. App. 821, 822 (2) (538 SE2d 900) (2000). But "[t]his tender is excused or waived where the seller, by conduct or declaration, proclaims that if a tender should be made, acceptance would be refused." (Footnote omitted.) *Nowlin*, 245 Ga. App. at 822 (2). "The law does not require a futile tender or other useless act." (Footnote omitted.) Id.

The admissions establish and the record supports that, upon learning that Fox Run had obtained final plat approval, Murray informed Fox Run that he was ready and prepared to close. He further scheduled a closing, which Fox Run did not attend. The record contains additional evidence that Blake, on behalf of Fox Run, had notified the broker that he did not intend to show for the scheduled closing, he did not want to close with Murray, and he was hopeful that his unilateral raising of the purchase price would thwart the closing. To the extent that Murray did not make a formal tender of the purchase money, Fox Run's entitlement to the tender was waived as it was clear that it would have been refused. *Nowlin*, 245 Ga. App. at 822 (2).

3. Finally, Fox Run argues that the trial court erred in denying its motion for summary judgment on Murray's claims. Pursuant to Divisions 1 and 2 of this opinion, the trial court properly denied Fox Run's motion.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

---

[3] Fox Run also argues that specific performance was inappropriate because there was a dispute as to the price of the lots. Our holdings in Divisions 1 and 2 (a), supra, render this argument meritless.

DECIDED NOVEMBER 27, 2007.

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider*, for appellant.

*Janet G. Cart, William J. Jones*, for appellee.