A08A1075, A08A1228. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. DOE; and vice versa.

(664 SE2d 893)

BLACKBURN, Presiding Judge.

In this civil action to recover for injuries suffered when a transit patron was attacked in a transit authority parking deck, defendant Metropolitan Atlanta Rapid Transit Authority (MARTA) appeals a jury verdict of $1.7 million awarded to plaintiff Jane Doe,[1] arguing that the trial court erred in striking MARTA's answer as a sanction for its intentional false response to a critical discovery request. We hold that for purposes of OCGA § 9-11-37 (d) sanctions, a defendant's intentional false response to a discovery request equates to a total failure to respond and therefore authorizes a trial court in its discretion to strike the defendant's answer. However, the trial court lacked jurisdiction to amend its judgment (to include prejudgment

---

[1] The plaintiff's actual name was not used so as to protect her privacy.

interest) after the notice of appeal was filed. Doe's cross-appeal of the trial court's order denying her attorney fees fails, as the trial court did not abuse its discretion under OCGA § 9-15-14 (b). Accordingly, in MARTA's appeal (Case No. A08A1075), we affirm the $1.7 million judgment but vacate the later amendment of that judgment which added pre-judgment interest. In Doe's cross-appeal (Case No. A08A1228), we affirm the denial of her motion for attorney fees.

The undisputed facts show that around 12:35 a.m. on the morning of June 25, 2002, a man assaulted and abducted Doe in a MARTA parking deck as she was approaching her car after having ridden a MARTA train. Despite her struggles, including her honking the car horn and screaming, he was able to force her into the trunk of her car and to take her car keys; he then drove the car down the deck and through the parking deck exit, while Doe continued to scream and kick in the trunk. No one stopped the car or alerted police. Driving her to a remote area, he raped her. He forced her back into the trunk and terrorized her over the next several hours (coercing her to reveal PIN information so he could obtain cash from her accounts using her bank and credit cards), until he removed her from the trunk and, after duct taping her, locked her in an abandoned house. After he left, she managed to escape and contacted police from a nearby convenience store. Police soon found the man in her car with her bank and credit cards, which led to his arrest and subsequent conviction for rape and other charges.

In March 2003, Doe sued MARTA for premises liability arising from negligent security at the parking deck. In her complaint, she alleged that because MARTA negligently provided no security personnel at the deck at the relevant times nor reasonable security measures (such as security cameras, fencing, call boxes, mirrors, and more lighting), the abduction and rape were not deterred nor stopped. At the jury trial in January 2007, MARTA moved for a directed verdict following the close of Doe's evidence, which motion the court denied.

During the presentation of MARTA's evidence, the court and Doe came to suspect that MARTA may not have been forthcoming in some of its discovery responses. The court conducted a hearing outside the presence of the jury and determined that MARTA had intentionally made a false response as well as other misleading responses to discovery requests regarding the key issue as to documents (which MARTA, as it turns out, had destroyed) showing the whereabouts of the security officers who were supposed to be patrolling or monitoring the parking deck at the relevant times. The court struck MARTA's answer, directed the jury that liability was established, and proceeded with the trial as to damages only. The

534

jury awarded Doe $1.7 million and judgment was entered accordingly, which MARTA timely appealed.

Doe then moved the trial court under OCGA § 51-12-14 to amend the judgment to include pre-judgment interest. Doe also moved the court to award her attorney fees under OCGA § 9-15-14 (b), claiming that MARTA's wrongful behavior unnecessarily expanded the proceedings. Because the Court of Appeals's clerk's office refused to docket the case until these motions were decided, the trial court conducted a hearing thereon and granted the motion to add pre-judgment interest but denied the awarding of any attorney fees. MARTA amended its notice of appeal to include this order also, and Doe cross-appealed the denial of attorney fees.

### Case No. A08A1075

1. In its appeal, MARTA first contends that the trial court erred in striking MARTA's answer for discovery abuse.[2] Citing OCGA § 9-11-37 and *Mayer v. Interstate Fire Ins. Co.*,[3] MARTA maintains that the court was not authorized to enter the ultimate sanction of striking MARTA's answer where MARTA had indeed answered the relevant discovery, albeit misleadingly and evasively.

MARTA misstates the extent of its offense. MARTA did not simply give evasive and misleading answers; MARTA intentionally gave a completely false response on the key issue of the creation and maintenance of documents that would have shown the whereabouts of the security personnel who Doe testified were not in place and who MARTA's witnesses testified were. The case for the most part rose and fell on whether the security officers were in fact patrolling the parking deck and monitoring the parking deck's exit at the relevant times.

Because of the importance of any documents which could help establish the key officers' whereabouts and activities at the time the assault and abduction were occurring, Doe requested that MARTA produce all documents showing who was on duty at the parking deck at the time of the incident; MARTA responded that the only relevant documents were certain "assignment records," which it produced. It did not reference any ongoing logs or daily security reports. Doe nevertheless then requested "all security patrol reports or other documents indicating the date, time, nature and findings of the patrols conducted at the subject parking facility during the three months prior to the subject incident through July 15th, 2002."

---

[2] Although Doe argues on appeal that the trial court struck the answer due to MARTA's spoliation of evidence, the record does not support this assertion.

[3] *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436 (254 SE2d 825) (1979).

*MARTA responded that it did "not create or maintain security patrol reports."* When asked for "Daily Activity Reports" of its officers relating to the parking deck in 2002, MARTA responded that such documents were "not currently available." Based on these discovery responses, MARTA was representing to Doe that no security patrol reports or the like had ever been created or maintained and thus were not available.

However, the evidence at trial told a much different story. Specifically, the evidence showed that MARTA security officers were required to complete contemporaneous security patrol logs or reports, sometimes known as "Daily Activity Reports," to document for their supervisors the officers' whereabouts and activities during their respective shifts. The officer who MARTA claimed was at the parking deck entrance when Doe's car exited testified that he would "put down exactly what [I] did during [my] shift" on these reports. The officer who MARTA claimed was patrolling the deck during the relevant time emphasized that he completed these reports throughout the course of his shift ("You complete them as you go") and would then turn them in at the end of his shift to his MARTA supervisor, who placed them in MARTA files. Without this report, this officer was unable to confirm that he was even on duty on the day when the assault took place. The shift supervisor for the relevant shift on June 25 confirmed that these reports were a daily log of his subordinates' activities that had to be turned into him at the end of each shift from each officer and that were then placed in MARTA's files. However, the evidence further showed that within months of the incident, MARTA consciously destroyed all such reports for 2002 when it moved its precinct offices for that area. The creation and subsequent destruction of these key documents were not disclosed to Doe until the court conducted its special hearing on the matter in the middle of trial.

Because it found that MARTA had unmistakably and intentionally misrepresented to Doe that such documents had never been created nor maintained (and thus had kept secret that it had consciously destroyed the documents), the trial court held that MARTA had flagrantly abused the discovery process and that therefore the court was striking MARTA's answer. The question before us is whether this discovery abuse authorized the trial court to do so.

OCGA § 9-11-37 (d) authorizes a trial court to "take any action authorized under subparagraphs (b) (2) (A) through (b) (2) (C) of this Code section" where a party has failed to respond to a document production request or an interrogatory. OCGA § 9-11-37 (b) (2) (C) authorizes a trial court to strike pleadings as a sanction for discovery abuse. Interpreting this statute, *Mayer v. Interstate Fire Ins. Co.,* supra, held that only "a *total* failure to serve answers or objections

would constitute a failure to respond under 37 (d) and would subject a party to immediate sanctions" without the necessity of the court's first issuing an order to respond. (Emphasis in original.) 243 Ga. at 439 (2). See *Strejc v. MARTA*[4] (only a total failure to respond to a discovery request authorizes the immediate sanction of striking a pleading). The question, therefore, is whether a party's intentionally false response to a discovery request (particularly one concerning the pivotal issue in the litigation) constitutes a total failure to respond that would justify the immediate sanction of striking a pleading.

As recognized in *Orkin Exterminating Co. v. McIntosh*,[5] "[s]ome courts have interpreted a false response to an interrogatory as a 'failure to respond' under Fed. R. Civ. P. 37 (d) or analogous state provisions and have imposed sanctions, including striking party's pleadings and imposing judgment." The rationale for this conclusion was well stated in *Sandoval v. Martinez*:[6]

> An interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response. It is *worse* than no response. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the court for an order to compel a response. . . . If the response is false, however, the party serving the interrogatory may never learn that it has not really received the answer to the interrogatory. The obstruction to the discovery process is much graver when a party denies having had a prior accident than when the party refuses to respond to an interrogatory asking if there have been any prior accidents.

(Emphasis in original.) See *Fautek v. Montgomery Ward & Co.*[7] (a document production "response containing misrepresentations denying the existence of requested materials is as good as no response at all" for purposes of Rule 37 and justifies immediate sanctions).

*Orkin Exterminating Co. v. McIntosh*, supra, went on to adopt the heart of this rationale when it held:

> Orkin responded in verified interrogatory answers: "No written reports were provided." This response did not *appear* to be evasive or incomplete; it was straightforward,

---

[4] *Strejc v. MARTA*, 197 Ga. App. 88 (397 SE2d 501) (1990).
[5] *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 589 (3) (452 SE2d 159) (1994).
[6] *Sandoval v. Martinez*, 780 P2d 1152, 1155-1156 (N.M. App. 1989).
[7] *Fautek v. Montgomery Ward & Co.*, 96 FRD 141, 145, n. 5 (N.D. Ill. 1982).

complete — and, in hindsight, clearly false. As the trial court noted, plaintiffs understandably did not move to compel production of these items because a verified interrogatory response denied they existed.

\* \* \*

A litigant will not be heard to contend that its own conduct has removed it beyond the reach of sanctions, when it has frustrated the orderly process prescribed in OCGA § 9-11-37 by false or erroneous responses to interrogatories. To condone such conduct would force parties to assume the falsity of every sworn interrogatory response and file endless motions preserving their right to relief. Such a rule would allow the unscrupulous to conceal documents from opposing parties by the simple expedient of denying their existence, without fear of penalty if the deception were by some chance discovered. It would discourage diligence in seeking out relevant documents even on the part of those not actively dishonest. Lack of diligence or negligence would not only be unpunished, it would be rewarded.

(Footnote omitted; emphasis in original.) 215 Ga. App. at 590-591 (3). See *City of Griffin v. Jackson*[8] (upholding the striking of defendant's answer where defendant lied concerning the existence of certain photographs — which had disappeared — in discovery responses).

These authorities persuade us that an intentionally false response to a document production request (particularly concerning a pivotal issue in the litigation) authorizes a trial court to impose the sanctions permitted by OCGA § 9-11-37 (d) for a total failure to respond. Accordingly, the trial court here was authorized to strike MARTA's answer for its intentionally false response regarding the creation and maintenance of the documents that would have reflected the officers' activities during their relevant shifts.

2. In its second enumeration of error, MARTA contends that the trial court erred in denying its motion for a directed verdict on Doe's claims on the ground that Doe failed to prove a breach of duty and proximate cause. However, in light of Division 1 above, which holds that the trial court properly struck MARTA's answer and entered default judgment on these very questions, this enumeration is moot.

3. MARTA's third enumeration claims that the court erred in not forcing Doe to either testify first or to leave the courtroom until she

---

[8] *City of Griffin v. Jackson*, 239 Ga. App. 374, 377-379 (1) (520 SE2d 510) (1999).

538

testified, as the rule of sequestration (OCGA § 24-9-61) had been invoked. To the extent Doe's testimony concerned the question of liability, this enumeration is moot, since we hold in Division 1 that the trial court properly entered default judgment on the question of liability. To the extent that the testimony that preceded Doe's testimony concerned damages, we address this enumeration.

MARTA cites *Justice v. Kern & Co.*[9] and *Walden v. MARTA*[10] for the proposition that because sequestration had been invoked, the trial court was required to either remove Doe from the courtroom or require her to testify first. However, in both of these cases, we upheld the trial court's discretionary decision to require that the plaintiff either testify first or leave the courtroom until her testimony; we did not require that the trial court impose these procedures or face reversal. Rather, although it has been described as a "better" procedure to have a party agent testify first (*Thayer v. State*[11]), we and the Supreme Court of Georgia have repeatedly held that it is within the court's broad discretion to allow a plaintiff to remain in the courtroom during the presentation of her case and to testify at a later point in that presentation. See, e.g., *Ga. R. & Banking Co. v. Tice*;[12] *Dickens v. Adams*[13] ("[i]t is a matter *entirely within the discretion of the trial judge* as to whether he will require that the testimony of a party to the case be taken before the taking of the testimony of the party's witnesses") (punctuation omitted; emphasis supplied); *Chrysler Corp. v. Wilson Plumbing Co.*;[14] *Cone v. Davis.*[15] Cf. *Smith v. State.*[16] We discern no abuse of that discretion here.

Moreover, "a violation of the rule of sequestration affects only a witness'[s] credibility and does not render a witness incompetent to testify." *Meadows v. Barker.*[17] The proper remedy for a violation "is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness." *Johnson v. State.*[18] MARTA's failure to request such a jury charge waives the matter on appeal. Id. at 858 (4).

[9] *Justice v. Kern & Co.*, 197 Ga. App. 272 (1) (398 SE2d 223) (1990).
[10] *Walden v. MARTA*, 161 Ga. App. 725, 726 (288 SE2d 671) (1982).
[11] *Thayer v. State*, 189 Ga. App. 321, 325 (3) (376 SE2d 199) (1988).
[12] *Ga. R. & Banking Co. v. Tice*, 124 Ga. 459, 464-465 (3) (52 SE 916) (1905).
[13] *Dickens v. Adams*, 137 Ga. App. 564 (1) (224 SE2d 468) (1976).
[14] *Chrysler Corp. v. Wilson Plumbing Co.*, 132 Ga. App. 435, 443 (6) (208 SE2d 321) (1974).
[15] *Cone v. Davis*, 66 Ga. App. 229, 238 (14) (17 SE2d 849) (1941).
[16] *Smith v. State*, 140 Ga. App. 385, 389 (4) (231 SE2d 83) (1976).
[17] *Meadows v. Barker*, 241 Ga. App. 753, 755 (3) (526 SE2d 643) (2000).
[18] *Johnson v. State*, 258 Ga. 856, 857-858 (4) (376 SE2d 356) (1989).

4. MARTA's fourth enumeration asserts that the trial court was without jurisdiction to amend its judgment to include pre-judgment interest after MARTA had filed its notice of appeal. We agree and vacate the amended judgment.

After MARTA had filed its notice of appeal of the $1.7 million judgment, Doe moved the court to amend that judgment to include pre-judgment interest under OCGA § 51-12-14. Believing it lacked jurisdiction to rule on the pending motion, the court deferred a decision on the motion pending the appeal. Unfortunately, the clerk's office of this Court then mistakenly informed the trial court that it was the policy of this Court that the appeal would not be docketed until the pending motion was decided. Faced with this prospect, the trial court held a hearing and ordered that the judgment be amended to include pre-judgment interest.

The trial court was right the first time.

> Georgia law is clear that the filing of the notice of appeal operates as a supersedeas and deprives the trial court of the power to affect the judgment appealed, so that subsequent proceedings purporting to supplement, amend, alter or modify the judgment, whether pursuant to statutory or inherent power, are without effect.

(Punctuation omitted.) *Lowe v. Center Neurology Assoc.*[19] See *Brown v. Wilson Chevrolet-Olds, Inc.*[20] Accordingly, we vacate (i) the trial court's order of January 11, 2008 that purports to amend the judgment to include pre-judgment interest and (ii) the trial court's order of January 23, 2008 insofar as it concerns the awarding of pre-judgment interest. See *DeClue v. City of Clayton.*[21] This does not preclude the trial court from ruling on the plaintiff's motion once the court has received a remittitur in this case.

### Case No. A08A1228

5. The trial court, however, did have jurisdiction to consider Doe's motion for attorney fees under OCGA § 9-15-14 (b). See *Fairburn Banking Co. v. Gafford.*[22] Doe asserted that MARTA's conduct had unnecessarily expanded the proceeding. After a hearing, the trial court found that MARTA's conduct did not expand the litigation; accordingly, the trial court denied the motion for attorney

---

[19] *Lowe v. Center Neurology Assoc.*, 288 Ga. App. 166, 168 (1) (653 SE2d 318) (2007).
[20] *Brown v. Wilson Chevrolet-Olds, Inc.*, 150 Ga. App. 525, 531 (2) (258 SE2d 139) (1979).
[21] *DeClue v. City of Clayton*, 246 Ga. App. 487, 493 (5) (540 SE2d 675) (2000).
[22] *Fairburn Banking Co. v. Gafford*, 263 Ga. 792, 793-794 (439 SE2d 482) (1994).

fees. In its cross-appeal, Doe challenges this ruling as an abuse of discretion. See *Kilgore v. Sheetz*[23] (rulings under OCGA § 9-15-14 (b) reviewed under an abuse of discretion standard).

"[T]he award of attorney fees [under OCGA § 9-15-14 (b)] is entirely within the discretion of the trial court after considering all the facts and law. . . ." *Rental Equip. Group v. MACI, LLC*.[24] There was evidence that MARTA's conduct in failing to disclose the creation and subsequent destruction of the key documents did not expand the proceeding, as the documents were destroyed before the discovery was propounded. Accordingly, the trial court did not abuse its discretion in denying Doe's motion for attorney fees. See id. at 165 (5) (b).

*Judgment of February 8, 2007 affirmed in Case No. A08A1075. Judgment of January 11, 2008 and judgment of January 23, 2008 (insofar as it concerns pre-judgment interest) vacated in Case No. A08A1075. Judgment of January 23, 2008 (insofar as it concerns the denial of attorney fees) affirmed in Case No. A08A1228. Miller and Ellington, JJ., concur.*

DECIDED JULY 8, 2008.

*Thomas, Kennedy, Sampson & Patterson, Thomas G. Sampson, Jeffrey E. Tompkins*, for appellant.

*Taylor, Busch, Slipakoff & Duma, Michele L. Stumpe, Louis Levenson*, for appellee.

---

[23] *Kilgore v. Sheetz*, 268 Ga. App. 761, 770 (2) (603 SE2d 24) (2004).
[24] *Rental Equip. Group v. MACI, LLC*, 263 Ga. App. 155, 164 (5) (b) (587 SE2d 364) (2003).