**SECOND DIVISION**
**ELLINGTON, C. J.,**
**BARNES, P. J., and McFADDEN, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 13, 2013**

# In the Court of Appeals of Georgia

A12A1883. HOWARD et al. v. ALEGRIA.

ELLINGTON, Chief Judge.

In this negligence and personal injury case, the defendants, AAA Cooper Transportation, Inc. ("ACT"), Ace American Insurance Company ("AAIC"), and Robert Lee Howard, Jr. (collectively, "the appellants"), appeal from the trial court's order, which denied their motion to withdraw an admission in judicio and sanctioned them for discovery abuse.[1] In its order, the court struck the appellants' joint answer and counterclaim as a sanction for intentionally destroying material evidence, for committing fraud on the court and the plaintiff, and for intentionally filing false responses to discovery requests. The appellants contend that the court erred in

---

[1] This Court granted the appellants' application for an interlocutory appeal, Case No. A12I0148.

concluding that they willfully committed discovery abuse, fraud, or spoliation of evidence and that it abused its discretion in denying their motion to withdraw and in striking their answer and counterclaim as a sanction for their alleged misconduct. For the following reasons, we affirm the trial court's order.

1. The appellants contend that the trial court erred in finding that they willfully and intentionally provided false discovery responses, abused the discovery process, and committed fraud on the court. They argue that the court ignored evidence that they acted reasonably under the circumstances and that the alleged improprieties were unintentional and the result of inadvertent acts or mistakes.

"In determining whether a party has abused discovery, the trial court sits as trier of fact, and this Court will uphold a finding of [willful] discovery abuse if there is any evidence to support it." (Citation and punctuation omitted.) *City of Griffin v. Jackson*, 239 Ga. App. 374, 377 (1) (520 SE2d 510) (1999). Moreover, the imposition of a sanction for failure to comply with discovery provisions of the Civil Practice Act does not require that a party displays, and the trial court finds, actual willfulness; instead, it requires at least a conscious or intentional failure to act, as distinguished from an accidental or involuntary non-compliance. Id.; see *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 734-735 (4) (698 SE2d 19) (2010) (while actual

2

willfulness is not required for the imposition of a sanction, the presence or absence of willfulness remains relevant to the *choice* of sanction).

In this case, the relevant, undisputed facts are as follows. On September 10, 2008, plaintiff/appellee Alegria was driving his pickup truck on Interstate 20 in Greene County when he lost control of his truck. The truck swerved onto the shoulder and then back onto the highway before coming to a stop in the right eastbound lane of the interstate. Shortly thereafter, a tractor trailer owned by ACT and being driven in that lane by Howard collided with the plaintiff's truck. During the collision, the plaintiff sustained severe, permanent injuries.

On September 16, six days after the collision, ACT's claim manager, Jerry Hill, sent an e-mail to ACT employees notifying them that, "in anticipation of a law suit,"[2] the tractor trailer involved in the collision should be "ground[ed]" and asking them to send him copies of personnel records, driver logs, maintenance records, and numerous other documents related to Howard, the tractor trailer, or the materials Howard was transporting at the time of the collision. A few days later, Hill received a letter (the "spoliation letter") from the plaintiff's attorney requesting information

_____

[2] In fact, in response to interrogatories from the plaintiff, ACT admitted that it and its insurer "first anticipated litigation" arising from the collision on the day of the collision, September 10, 2008.

about "every known policy of insurance" held by ACT that was pertinent to the collision, including excess liability insurance and umbrella coverage. The spoliation[3] letter also advised ACT to preserve and maintain the tractor trailer's post-collision condition, "any downloadable computer data" from the tractor trailer's computer system, several specific business records and documents relating to Howard's employment, the tractor trailer, and/or the collision, and all other material that was, or may be, relevant to the incident.

In September 2010, the plaintiff filed a personal injury complaint against Howard, as the driver of the tractor trailer; ACT as the owner of the tractor trailer and as Howard's employer; and AAIC, ACT's liability insurance provider. The appellants filed a joint answer and a counterclaim against the plaintiff, asserting that the plaintiff's negligence in failing to maintain control of his car caused the collision and resulted in damage to the tractor trailer.

During discovery, the plaintiff sent ACT requests for admissions, interrogatories, and requests for the production of documents. In November 2010,

_____

[3] "[S]poliation refers to the destruction or failure to preserve evidence that is necessary to *contemplated or pending litigation.*" (Citation and punctuation omitted; emphasis in original.) *Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009).

4

ACT responded[4] as follows: it denied having an excess liability or umbrella insurance policy; it admitted that it had begun repairing the tractor trailer on September 15, 2008, five days after the collision, adding that the repairs were performed "as a result of the accident caused by Plaintiff's negligence;" and it stated that most of the requested documents "have been destroyed pursuant to [ACT's] six (6) month record retention policy." Further, ACT responded "no" to both of the following interrogatories: "Please state whether the tractor trailer involved in the collision contained or utilized an on-board recording device, an on-board computer, tachograph, trip monitor, trip recorder, trip master, or *device known by any other name* which records the information concerning the operation of the truck[,]" and "Was a tracking device, recording device and/or GPS or Black Box device in or on the [tractor trailer] on 09/10/08?"[5] (Emphasis supplied.) Finally, in response to a request for "[c]opies of any and all printouts of any on-board recording device and on-board computer, tachograph, trip monitor, trip recorder, trip master, or *device*

___

[4] The interrogatory responses were verified by Hill, ACT's claim manager.

[5] Notably, in those responses, the appellants did not raise any objection or contend that the interrogatories were vague or confusing; they simply answered, "no." See OCGA § 9-11-33 (a) (2) ("Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer.").

5

*known by any other name* which records information concerning the operation of the truck for the thirty (30) days before the collision through and including thirty (30) days after the collision," ACT responded that it had "no responsive documents" to that request. (Emphasis supplied.) In fact, a month later, ACT repeated these denials in response to an e-mail from the plaintiff's counsel requesting clarification of the company's discovery responses.

In March 2011, the plaintiff's attorney sent a letter to the defendants' counsel expressing concerns about the responses to the requests for production and warning the defendants that they had ten days to either produce the requested documents or at least confirm that the documents had been irrevocably destroyed, and, if they failed to comply, he would file a motion to compel. In an e-mailed response, the defendants' counsel produced a few of the requested documents.

Then, in April 2011, the plaintiff deposed Hill, ACT's claims manager and the employee who had verified ACT's responses to interrogatories. Although Hill initially stated that he did not remember whether he had received a spoliation letter from the plaintiff in September 2008, he later admitted that he had received the letter. Hill also admitted that he had immediately anticipated that the collision may result in litigation and, as a result, he had attempted to collect relevant documents from

6

others in the company so they could be preserved, even before he received the spoliation letter. Hill repeatedly testified that, even though he knew that ACT had a duty to collect and preserve the documents, many of the documents referred to in the spoliation letter either had never existed or had been destroyed pursuant to the company's six month record retention policy. A month after Hill's deposition, however, ACT filed a supplemental response to the plaintiff's requests for documents in which it claimed that an unidentified ACT employee had recently discovered some of the requested documents "in a drawer while cleaning out an area around her desk."

In May 2011, the parties agreed to conduct depositions of two non-party witnesses; the depositions were scheduled for May 23. The appellants, however, issued subpoenas duces tecum to the witnesses that ordered them to produce certain documents to the appellants' attorneys' office on May 16, a week before the scheduled depositions. The appellants did not send a notice of the subpoenas to the plaintiff. The appellants and their attorneys met with one of the witnesses on May 16, and the witness executed an affidavit at the appellants' request. After that meeting, the appellants notified the plaintiff that the deposition of that witness had been cancelled. When the plaintiff's counsel learned about the secret subpoenas and the appellants' meeting with the witness, he demanded that the appellants produce the

7

subpoenas, the witness' affidavit, and the documents that the witness had provided to them. Although the appellants assured the plaintiff in writing that they would produce these materials, they subsequently claimed that they had not received any documents from the witness on May 16, and, as a result, would not produce any.

On June 15, 2011, the plaintiff filed a motion for sanctions and to strike the appellants' answer and counterclaim, contending that the appellants committed fraud, discovery abuse, intentional misrepresentation, and spoliation of material evidence. Then, on July 14, almost three years after the collision and ACT's receipt of the spoliation letter, the appellants' counsel sent a letter to the plaintiff's counsel, which stated as follows:

> As a result of Plaintiff's Motion for Sanctions, [ACT] and defense counsel has discussed with Volvo representatives the capabilities of the engine control unit [of the tractor trailer]. On or about July 13, 2011, Volvo representatives informed [ACT] and defense counsel that *the subject tractor contained an SRS Module which may contain crash or near crash data. As a result of this new information, the subject tractor trailer has been grounded . . .* until we can coordinate a date and time for the SRS module contained in the tractor to be removed and tested at an authorized facility of Volvo.

(Emphasis supplied.) The appellants also supplemented some of their previous responses to the interrogatories and produced several other documents that they had previously insisted were destroyed or had never existed. Among these documents was a copy of a September 24, 2008 e-mail from an insurance adjuster to Hill and another ACT employee; the e-mail stated that "I have the [declaration] page for the primary [insurance] policy if you need it. Jerry [Hill] has the excess [insurance] info."

During the sanctions hearing on October 3, 2011, the appellants claimed that the plaintiff's allegations of discovery abuses and other wrongdoing were simply a "manufactured web of conspiracy" designed to shift the focus from the issue of who was liable for the collision. In response to the plaintiff's specific allegations, the appellants asserted that, although they were required to provide the plaintiff with notice of the subpoenas duces tecum, pursuant to OCGA § 9-11-5 (a),[6] their failure to provide such notice was simply an inadvertent "administrative mistake" and that,

_____

[6] See OCGA § 9-11-5 (a) ("[E]very written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties."); see also OCGA §§ 9-11-34 (a) (1), (c) (1) (Requests to produce documents may be made upon non-parties, "in which event a copy of the request shall be served upon all parties of record[.] . . . The party making a request under this Code section shall, upon request from any other party to the action, make all reasonable efforts to cause all information produced in response to the nonparty request to be made available to all parties."); 9-11-45 (a) (1) (C) (Subpoenas to non-parties for discovery "shall be issued and served in accordance with law governing issuance of subpoenas for attendance at court[.]").

because the non-party had produced no documents, there was no prejudice to the plaintiff; that they never intentionally provided false responses to the discovery requests and that their numerous, incorrect responses were simply the result of innocent mistakes about what they had believed was true at the time they gave the responses; that they had misunderstood the interrogatories and the request for documents concerning whether the tractor trailer had an "on-board" computer to refer, instead, to "an external or separate device," and, as a result, they incorrectly denied that the tractor trailer had on-board electronic control units; and that, even if they improperly downloaded and destroyed data from the tractor trailer's electronic control units, the information would not have been helpful to the plaintiff.

The appellants also responded to claims that ACT's repair of the tractor trailer constituted spoliation of evidence by tendering a letter (the "inspection letter") that they claimed they had sent to the plaintiff's attorney on October 22, 2008, offering the plaintiff the opportunity to inspect the tractor trailer before it was repaired. The plaintiff, however, argued that the appellants had fraudulently fabricated the inspection letter and showed the court that there were material differences between that letter and a similar letter his attorney received from the appellants in October 2008. Both letters were identical *except* that the letter received by the plaintiff's

attorney did not include any statement about the opportunity for the plaintiff to inspect the tractor trailer. Further, regardless of timing or content of the inspection letter, the plaintiff reminded the court that the appellants had already specifically admitted in a verified interrogatory response that ACT started repairing the tractor trailer on September 15, 2008, five days after the collision and over a month before the appellants allegedly sent the inspection letter. Even when confronted with this admission in judicio, however, the appellants did not attempt to withdraw the admission during the sanctions hearing.

Finally, two days *after* the sanctions hearing, but before the court ruled on the motion for sanctions, the appellants produced documents showing that they had $50 million in excess liability insurance coverage at the time of the collision, even though they had consistently denied up to that point that they had any excess insurance coverage. Moreover, on the same day, ACT filed a motion to withdraw its admission that it had begun repairing the tractor trailer on September 15, 2008, and that the repairs were performed "as a result of the accident caused by Plaintiff's negligence." The motion was accompanied by an affidavit of ACT's director of maintenance, who stated that, based upon his review of ACT's electronic service and repair records, ACT did not actually repair the tractor trailer until January or February 2009.

In its order on the plaintiff's motion for sanctions and ACT's motion to withdraw its admission, the trial court found, as a matter of fact, that ACT began repairing the tractor trailer on September 15, 2008, five days after the collision, and that, on or around the same day, ACT downloaded information from the tractor trailer's computer modules. The court found that that information was "the highest and best evidence of vehicle defects, system malfunctions, and brake problems and of what actually occurred immediately prior to and during the [collision]," and that, as a result of the download, data that was "critical" to the plaintiff's negligence claim had been destroyed. The trial court then specifically concluded that the appellants had, among other things, committed the following improper acts:

* intentionally abused the discovery process and prejudiced the plaintiff by spoliating "crucial" evidence, i.e., by destroying computer records and other documents and by making repairs on the tractor trailer, when it is undisputed that they had already anticipated that there would be litigation arising from the collision and had received the spoliation letter from the plaintiff;

* acted willfully in bad faith and with a conscious disregard of the consequences by repeatedly and knowingly making false statements that relevant, requested documents either never existed or had been destroyed within six months of

12

the collision, but, after the plaintiff filed his motion for sanctions, claiming that they had just found the documents, a claim the court deemed incredible;

* intentionally fabricated evidence;

* intentionally and falsely denied the existence of computer modules on the tractor trailer;

* intentionally and falsely denied the existence of excess liability insurance coverage; and

* intentionally violated statutory law and Georgia's Rules of Professional Conduct and committed a fraud on the court by procuring the subpoenas for documents without giving the required notice to the plaintiff.

In sum, the court concluded that the appellants' claims of innocence or mistake *lacked any credibility*; that their false responses to discovery requests equaled a total failure to respond; that the appellants had taken steps, intentionally and in bad faith, to conceal pertinent and potentially damaging evidence in this case; that there was no way to remedy the destruction of evidence; and that the plaintiff was prejudiced as a result of this misconduct. Consequently, the court struck the appellants' answer and

counterclaim as a sanction pursuant to OCGA § 9-11-37 (b) (2) (C).[7] Further, in denying ACT's motion to withdraw its admission about the timing of its repairs to the tractor trailer, the court concluded that the evidence ACT had filed with its motion was not credible in light of the other evidence adduced thus far in the litigation.

We have reviewed the record and find that there is evidence to support the trial court's conclusions that the appellants' claims of innocence or mistake lacked any credibility and that they had intentionally taken steps to prevent the plaintiff's discovery of pertinent and potentially damaging evidence in this case. Accordingly, such conclusions must be affirmed. *City of Griffin v. Jackson*, 239 Ga. App. at 377 (1).

2. The appellants argue that the court erred in finding that they had intentionally spoliated certain material evidence by deleting the tractor trailer's computer data and by repairing the tractor trailer before giving the plaintiff an opportunity to inspect it.

---

[7] The appellants concede that, by striking their answer and counterclaim, their liability for the collision and the resulting injuries to the plaintiff was established as a matter of law, and that the only remaining issue to be determined at trial is the amount of damages incurred by the plaintiff.

(i) Regarding the computer data, the appellants argue that, even if they improperly destroyed information from the computer units, the data would not have been helpful to the plaintiff. The plaintiff's expert in accident reconstruction, however, made the following statement in his affidavit:

> Computer modules on the [tractor trailer] record a significant amount of relevant information . . . [which] can be downloaded from the computer modules and *is used to determine what occurred at the time of the collision. . . .* [These] modules . . . receive information from multiple sensors located throughout the vehicle [and] would have been activated by the crash [at issue]. . . . [The] modules record valuable information concerning the operation of the truck such as vehicle speed, engine speed, braking information, amount of accelerator involvement, governor position, whether or not the cruise control was engaged, and system or component defect information.

(Emphasis supplied.) According to the expert, when ACT downloaded information from the computer modules after the collision, it destroyed relevant information that could have been obtained from the onboard computers and that was "the highest and best evidence of what actually occurred at the time of the collision in this case."

Because the trial court, as the trier of fact during the sanctions hearing, was solely responsible for weighing the evidence and resolving any conflicts in the evidence, and because there was evidence to support its conclusion that the plaintiff

15

was prejudiced by the appellants' destruction of information from the computer units, this claim of error lacks merit. See *City of Griffin v. Jackson*, 239 Ga. App. at 377 (1).

(ii) As for the repairs to the tractor trailer, the appellants contend that the trial court erred in finding that they had spoliated evidence, arguing that the plaintiff had waived his opportunity to inspect the tractor trailer's post-collision condition by failing to do so, despite being notified as early as December 2008[8] that ACT intended to make the repairs in January or February 2009. As shown above, however, the trial court found as a matter of fact that ACT started making the repairs on September 15, 2008, based on ACT's admission of that fact and other evidence.[9] Thus, by December 2008, the appellants had already altered the condition of the tractor trailer. Consequently, the appellants' argument that the plaintiff's failure to timely inspect the tractor trailer absolves them of any culpability for spoliating evidence lacks merit.

3. The appellants contend that the trial court erred in denying their motion to withdraw their admission that they performed some repairs on the tractor trailer on September 15, 2008, five days after the collision.

---

[8] The appellants have abandoned any reliance on the October 2008 inspection letter, based upon the court's finding that they had fraudulently fabricated it.

[9] See Division 3, infra, regarding the appellants' motion to withdraw that admission.

Under OCGA § 9-11-36 (b),

> [a]ny matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. . . . [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

"The court need not consider the second prong of the test if the party seeking to withdraw admissions fails to establish the first prong, which is not perfunctorily satisfied." (Citation and punctuation omitted.) *Fox Run Properties v. Murray*, 288 Ga. App. 568, 570 (1) (654 SE2d 676) (2007).

In order to show that the presentation of the merits of this case would be subserved by the withdrawal, the appellants were required to establish that "the admitted requests either could have been refuted on trial of the issues by *admissible evidence having a modicum of credibility or that the admitted requests were incredible on their face*; and that the denials being tendered to the court with the motion to withdraw had not been offered solely for purposes of delay." (Citation and punctuation omitted; emphasis supplied.) Id. "We will not disturb the trial court's

17

ruling on a motion to withdraw admissions absent a showing of abuse of discretion." (Citation omitted.) Id.

The appellants argue that they presented "undisputed, credible evidence" that showed that ACT did not begin repairs on the tractor trailer until January 2009. However, the evidence, which consisted of two affidavits of ACT's director of maintenance and supporting documents, was not produced until *after* the October 2011 hearing on the plaintiff's motion for sanctions, and the plaintiff disputed the accuracy and credibility of this newly produced evidence. Moreover, the trial court specifically found that this new evidence *was not credible* in light of the other evidence adduced thus far in the litigation.

Given the court's conclusion that the evidence produced by the appellants to support their motion to withdraw their admission was not credible, the appellants failed to meet their burden of showing that their admission would have been "refuted at trial by admissible evidence having a modicum of credibility." (Citation and punctuation omitted.) *Fox Run Properties v. Murray*, 288 Ga. App. at 570 (1). Consequently, the trial court did not abuse its discretion in denying the motion to withdraw. Id.

4. The appellants contend that the trial court erred in striking their joint answer and counterclaim as a sanction for discovery abuse, pursuant to OCGA § 9-11-37. Specifically, they argue that the court improperly concluded that their answers to two interrogatories were knowingly false and wilfully made in bad faith and that, instead, their answers evidenced a dispute between the parties as to the *meaning* of the interrogatories that had to be resolved via a motion to compel, pursuant to OCGA § 9-11-37 (a). According to the appellants, the plaintiff's failure to file a motion to compel precluded the court from imposing any sanctions for discovery abuse under OCGA § 9-11-37 (d) (1). Under the circumstances presented here, we disagree.

(a) First, contrary to the appellants' claim that our review is de novo, "[i]n matters involving discovery disputes, trial judges have broad discretion in controlling discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." (Punctuation and footnote omitted.) *Mincey v. Ga. Dept. of Comm. Affairs*, 308 Ga. App. 740, 747 (2) (708 SE2d 644) (2011).

> This is because trial judges, through their direct involvement with the case, the parties, and the attorneys, and their familiarity with the actions of the parties in the conduct of discovery in similar cases that are

19

properly brought to their attention, are in the best position to evaluate the parties' conduct and to determine the appropriate level of sanctions.

(Citation and punctuation omitted.) *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 734 (4) (698 SE2d 19) (2010).

(b) Second, the appellants' arguments ignore the fact that the trial court did not impose sanctions simply because they had intentionally provided false answers to two interrogatories, but also because that they had intentionally and repeatedly lied about whether certain requested documents existed, failed to produce requested documents, fabricated evidence, and committed other acts of discovery abuse, as recounted above. Thus, to the extent that they assert that the sanctions imposed were unwarranted or too extreme, that assertion lacks merit.

(c) Third, on the issue of whether, under the circumstances presented, the plaintiff was required to file a motion to compel discovery before the court was authorized to impose any discovery sanctions, OCGA § 9-11-37 (a) (3) provides as follows: "For purposes of the provisions of [the Civil Practice Act] which relate to depositions and discovery, an evasive or incomplete answer is to be treated as a *failure to answer*[.]" (Emphasis supplied.) See *Mincey v. Ga. Dept. of Community Affairs*, 308 Ga. App. at 747 (2).

20

An interrogatory answer that falsely denies the existence of discoverable information is not exactly equivalent to no response. *It is worse than no response*. When there is no response to an interrogatory or the response is devoid of content, the party serving the interrogatory at least knows that it has not received an answer. It can move the court for an order to compel a response. If the response is false, however, the party serving the interrogatory may never learn that it has not really received the answer to the interrogatory. *The obstruction to the discovery process is much graver when a party denies having the requested information than when the party refuses to respond to an interrogatory asking if such information is available.*

(Citation and punctuation omitted; emphasis in original and supplied in part.) *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 737 (4) (b) (698 SE2d 19) (2010). Further, a trial court is authorized to strike a party's pleadings or impose other sanctions for discovery abuse, including the party's failure to respond to a document production request or an interrogatory. OCGA § 9-11-37 (b) (2) (C), (d) (1). Therefore, if a party wilfully and knowingly responds to discovery requests with false answers to interrogatories and/or with false statements unequivocally denying the existence of requested discoverable materials, the trial court is authorized to consider this a failure to respond under OCGA § 9-11-37 (a) (3), and, as a consequence, immediately sanction the party pursuant to OCGA § 9-11-37 (b) (2) (A) - (C) and (d)

21

(1). See *MARTA v. Doe*, 292 Ga. App. 532, 535-537 (1) (664 SE2d 893) (2008) (An intentionally false response to a discovery request about a pivotal issue in the litigation constituted a total failure to respond to discovery that authorized the trial court to immediately impose sanctions under OCGA § 9-11-37 (d) (1).).

It follows that, when a defendant wilfully, knowingly, falsely, consistently and unequivocally denies the existence of requested discoverable documents, the plaintiff is not required to obtain an order compelling discovery before seeking sanctions under OCGA § 9-11-37 (d) (1). *MARTA v. Doe*, 292 Ga. App. at 536-537 (1);[10] see *Deep South Constr. v. Slack*, 248 Ga. App. 183, 186 (2) (546 SE2d 302) (2001) (An order compelling discovery is not a condition precedent for imposing sanctions under OCGA § 9-11-37 (b) (2) (C) or (d) (1).).[11] Instead, prior to the imposition of such

---

[10] Although the appellants cite to *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436 (254 SE2d 825) (1979), in support of their argument that a party must always file a motion to compel before seeking sanctions under OCGA § 9-11-37 (d), *Mayer* involved incomplete or evasive answers to discovery requests that evidenced a dispute as to whether the answers were adequate and accurate. Id. at 438-440 (2). In contrast, the responses at issue in this case were complete, clear and unequivocal (albeit false) statements that the plaintiff was justified in relying upon without further inquiry as to their accuracy. Thus, the *Mayer* rule cited by the appellants is inapplicable to this case.

[11] See also *Santora v. American Combustion*, 225 Ga. App. 771, 773 (1) (b) (485 SE2d 34) (1997) (This Court affirmed the dismissal of the plaintiff's case after he wilfully attempted to conceal a crucial document from the opposing party by

22

sanctions, all that is required is a request for sanctions, notice to all parties, and a motion hearing to determine if the offending party's failure to respond was wilful. *Exum v. Norfolk Southern R.*, 305 Ga. App. 781, 782-783 (1) (701 SE2d 199) (2010); *Stolle v. State Farm &c.*, 206 Ga. App. 235, 237 (3) (424 SE2d 807) (1992).

In this case, as the trial court's order clearly shows (and as explained above), its decision to strike the appellants' answer and counterclaim was based upon its conclusion that the appellants intentionally lied in *numerous* responses to interrogatories and document requests, abused its subpoena power, and intentionally destroyed crucial and probably damaging evidence, as well as the court's express rejection of the appellants' claim that their actions were the result of a "series of inadvertent mistakes." Moreover, the court specifically concluded that the appellants' intentionally false responses to the discovery requests constituted a "total failure to respond." Consequently, we find no abuse of discretion in the trial court's decision to strike the appellants' answer and counterclaim as a sanction for wilful discovery

repeatedly offering false and misleading discovery responses that effectively prevented the opposing party from compelling production of the document. This Court held that "the requests and rulings on the part of counsel and the trial court to ensure completion of discovery . . . [would] be construed as the equivalent of a motion to compel and [an] order compelling discovery under O.C.G.A. § 9-11-37 (a).") (citation and punctuation omitted).

abuse, pursuant to OCGA § 9-11-37 (a) (3), (b) (2) (C), and (d) (1). See *MARTA v. Doe*, 292 Ga. App. at 537 (1); *Deep South Constr. v. Slack*, 248 Ga. App. 183, 186 (2) (546 SE2d 302) (2001) (affirming the trial court's dismissal of plaintiff's action as a sanction for a failure to produce requested documents); see also *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. at 734-739 (4) (affirming the trial court's sanction of the defendant under OCGA § 9-11-37 (d) based upon the defendant's patently false discovery responses and its misrepresentations to the trial court); *City of Griffin v. Jackson*, 239 Ga. App. at 377-382 (1) (affirming the trial court's striking of the defendant's answer where the defendant repeatedly lied about the existence of certain documentary evidence in discovery responses).

5. The appellants contend that the trial court abused its discretion in striking the joint answer as to Howard and the insurance company, AAIC, based upon discovery abuse committed solely by ACT. They argue that the plaintiff's interrogatories, requests for documents, and requests for admissions were all addressed solely to ACT and, therefore, Howard and AAIC had no duty to respond to them and were not bound by ACT's fraudulent responses.

In this case, it is undisputed that Howard was ACT's employee at the time of the collision and that ACT's liability is based, in part, on respondeat superior; that

24

AAIC is ACT's insurer; that all three defendants jointly filed an answer and counterclaim; that they have been jointly represented by the same attorneys throughout this litigation; that they jointly responded to the plaintiff's motion for sanctions; that they jointly filed non-party affidavits after the plaintiff filed his motion for sanctions; that they were jointly represented by counsel during the sanctions hearing; that they jointly filed a supplemental response to the plaintiff's motion after the hearing; and that, after the court issued its order striking their joint answer and counterclaim, they filed a joint request for a certificate of immediate review.

After receiving the certificate, the appellants filed a joint application for interlocutory appeal in this Court, and we granted the application on February 29, 2012. Then, on March 8, the appellants filed amendments to their original pleadings in the trial court, with ACT and AAIC jointly filing an amended answer and counterclaim and Howard filing a separate amended answer. At that time, all three appellants were still represented by the same attorneys who had represented them jointly throughout the litigation. However, despite this apparent, albeit belated, attempt to establish that they were not jointly culpable for the discovery abuse at issue on appeal, the appellants *still* jointly filed a notice of appeal in the trial court, as well

as an appellate brief and reply brief in this Court. Thus, the record does not support the appellants' arguments.

Moreover, the appellants failed to raise this issue in the trial court in any manner or at any time prior to seeking an interlocutory appeal from its sanctions order. Under these circumstances, we conclude that they have waived their opportunity for appellate review of this issue. See *West v. State*, 300 Ga. App. 583, 585 (2) (685 SE2d 486) (2009) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.") (footnote omitted).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*