**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**November 15, 2017**

# In the Court of Appeals of Georgia

A17A1001. FULTON COUNTY, GEORGIA v. SOCO
CONTRACTING COMPANY, INC.

RAY, Presiding Judge.

In 2013, Fulton County (the "County") and SOCO Construction Company, Inc. ("SOCO") executed a written contract for the construction of a cultural center. The contract was approved by the Fulton County Board of Commissioners. As a result of several delays, including those caused by change orders, inclement weather, and the shutdown of the federal government, the scope of the work and time line was altered.

SOCO filed the instant complaint against the County for, inter alia, breach of contract and bad faith performance of the contract. SOCO also sought attorney fees and injunctive relief. SOCO and the County filed cross-motions for summary judgment on all claims. The trial court granted summary judgment in favor of SOCO

and against the County.[1] In the same order, the trial court also denied the County's motion for reconsideration of its denial of the County's motion to withdraw admissions.

We vacate the trial court's denial of the County's motion for summary judgment, which asserted that any claims arising from unwritten change orders are barred under the doctrine of sovereign immunity, and remand the case for further consideration. Further, we affirm in part and reverse in part the trial court's order denying the County's motion for reconsideration of its motion to withdraw admissions. Finally, we vacate and remand the trial court's ruling on attorney fees.

> To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . We conduct a de novo review a trial court's grant of summary judgment.

(Citations and punctuation omitted.) *Bright v. Sandstone Hospitality, LLC*, 327 Ga. App. 157, 157-158 (755 SE2d 899) (2014).

---

[1] The Association of County Commissioners of Georgia has filed an amicus curiae brief in this case.

2

In May 2013, the County and SOCO executed a written contract for the construction of the Aviation Community Cultural Center near the Fulton County Airport. The contract specified that the work should be completed within 287 days from the County's issuance of the notice to proceed or the day the work began, whichever came first, with that period to be increased by change order due to changes in the scope of work, or upon the occurrence of other delays or events not the fault of the contractor. Section 00700-87A of the "General Conditions" portion of the contract provides that

> [a] Change Order is a written order to the Contractor signed to show the approval and authorization of the County, issued after execution of the Contract, authorizing a change in the Work and/or an adjustment in the Contract Sum or the Contract Time. Change Orders shall be written using forms designated by the County with Contractor providing supporting documentation as required by the Construction Manager. The Contract Sum and the Contract Time *may be changed only by approved Change Order pursuant to Fulton County Procedure 800-6. . . .* A Change Order signed by the Contractor indicates the Contractor's agreement therewith, including the adjustment in either or both of the Contract Sum or the Contract Time.

(Emphasis supplied.) It also provides that "[t]he County, without invalidating the Contract, may order changes in the Work within the general scope of the Contract as defined herein."

Fulton County Policy and Procedure 800-6 ("Fulton Procedure 800-6"), titled "Procedures for Handling Change Orders," provides that "except as otherwise provided . . . , change orders shall be effected only through a written, bilateral agreement (Modification) between the County, acting through its Board of Commissioners, and the contractor." Procedure 800-6 allows for the authorization of change orders when needed, inter alia, to correct deficiencies in design or construction documents provided by architects or engineers, to remedy concealed conditions, abnormal inclement weather, and owner-requested changes within the scope of the contract. It further provides that the proper "Change Order Procedure" requires the "[a]greement between County and contractor for change [to be] clearly defined in a Written Modification," signed by the Contractor and approved by the Board of Commissioners. Section G (2) of Procedure 800-6, captioned "Extraordinary Circumstances," provides that the "County Manager is authorized to approve change orders regardless of the amount when due to extraordinary circumstances, work must be implemented before the Board of Commissioners can act." Such extraordinary

4

circumstances include a "[l]oss of substantial resources due to delay, including delay to critical path schedule."

SOCO began work on the cultural center on May 29, 2013. However, SOCO did not achieve substantial completion of the project until May 29, 2014, beyond the time anticipated in the contract. SOCO contends that the construction of the cultural center was delayed due to, inter alia, adverse weather conditions, delays caused by the County's design for the cultural center, the County's unwillingness to make timely decisions on changes, and the impact that the federal government's shut down had on obtaining certain permits. As a result of these issues, the County ordered changes to SOCO's scope of work, and the County's program manager listed more than 30 change orders in its September 5, 2014, change order evaluation log. However, SOCO does not provide citations to the record, nor can we find any, indicating that the change orders were executed through bilateral, written agreements. SOCO admits that the County never issued a change order extending the contract time, despite these delays. Further, the County did not release its Certificate of Substantial Completion until February 17, 2015, and withheld release of certain retainage fees until January 21, 2015.

SOCO then filed suit against the County for breach of contract and bad faith. It also sought attorney fees and injunctive relief. The County answered. On June 30, 2015, SOCO sent its first Request for Admissions to the County by hand-delivery. The County did not respond until on August 3, 2015, 33 days later. Because the County's response to the Requests for Admissions was served to SOCO more than 30 days after service of the request, the Requests for Admissions were deemed admitted pursuant to OCGA § 9-11-36 (a) (2). See *Adewumi v. Amelia Grove/Ashland Park Homeowners Assoc., Inc.*, 337 Ga. App. 275, 277 (2) (787 SE2d 761) (2016).

On April 26, 2016, the County filed a motion to withdraw the Requests for Admissions. The County attached an affidavit of Tommy Walton, a paralegal with the Fulton County Attorney's Office, who averred that the responses to the Request for Admissions were late due to an administrative error. The County also alleged that it mistakenly admitted SOCO's Request for Admission #37 that it was liable for "all damages alleged by SOCO in its Complaint." The trial court denied the motion to withdraw. The trial court also denied the County's petition for interlocutory review, and the County filed its motion for reconsideration of the trial court's denial of the motion to withdraw admissions.

On June 27, 2016, the County moved for summary judgment on the grounds that the trial court lacked subject matter jurisdiction because of sovereign immunity. In its final order, the trial court, inter alia, denied the motion for reconsideration and denied the County's motion for summary judgment. The County appeals from that order.

1. The County argues that the trial court erred in denying its motion for summary judgment because the trial court lacked subject matter jurisdiction due to the applicability of sovereign immunity. The County argues that although the State has waived sovereign immunity for the breach of any written contract, it did not waive immunity for causes of action arising from modifications to the written contract that failed to follow the written change order policy outlined in the contract. For the following reasons, we vacate the trial court's ruling on this issue and remand the case for further consideration.

In Georgia, the doctrine of sovereign immunity has constitutional status and may be waived only by an act of the General Assembly or by the Constitution itself. *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 472 (2) (759 SE2d 804) (2014). The Georgia Constitution addresses the waiver of the State's immunity of liability for breach of contract as follows:

(c) The [S]tate's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the [S]tate or its departments and agencies. . . .

(e) Except as specifically provided in this Paragraph, sovereign immunity extends to the [S]tate and all of its departments and agencies. The sovereign immunity of the [S]tate and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const., Art. I, Sec. II, Par. IX (c) and (e). "The sweep of sovereign immunity under the Georgia Constitution is broad, [and its] plain and unambiguous text . . . shows that only the General Assembly has the authority to waive the State's sovereign immunity." (Citation omitted.) *Olvera v. Univ. Sys. of Ga.'s Bd. of Regents*, 298 Ga. 425, 426 (782 SE2d 436) (2016).

"[S]overeign immunity is a threshold issue that the trial court [is] required to address before reaching the merits of any other argument." (Footnote omitted.) *Albertson v. City of Jesup*, 312 Ga.App. 246, 248 (1) (718 SE2d 4) (2011). It is axiomatic that "[t]he party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver.*"* (Citations omitted.) *Bd. of Regents of the*

8

*Univ. Sys. of Ga. v. Doe*, 278 Ga.App. 878, 881(1) (630 SE2d 85) (2006). "Whether sovereign immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo." (Citation omitted.) *Ga. Dept. of Labor v. RTT Assocs., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016).

In the instant case, the County argues that although it did have a written contract with SOCO, it did not waive its defense of sovereign immunity as to any claims arising from modifications to that contract that did not follow the protocol for written change orders as outlined in the contract and in Fulton Procedure 800-6. The County cites to *RTT Assocs. Inc.*, supra at 82-83 (2), for the assertion that the limited waiver of sovereign immunity for actions ex contractu applies only to written agreements, and may not be extended by oral directives or course of conduct.

In *RTT Assocs., Inc.*, supra, the Department of Labor ("DOL") executed a written contract with a software vendor, RTT, that by its terms expired on June 30, 2012. The written contract also specified that amendments must be made in writing and fully executed by both parties. Id. at 78-79. The DOL executed two internal project change request documents extending the scope and time line of the project. However, the change requests were not executed by RTT, and no written amendment to the contract was executed by either party to extend the expiration of the contract

9

or modify other contract terms. Id. at 79. After the DOL refused to compensate RTT for work performed after the contract expired, RTT claimed that the contract had been extended by certain internal writings of the department and by the parties' course of conduct. Id. at 79. Our Supreme Court held that "even if . . . DOL and RTT waived, through their course of conduct, the provision that the contract could be amended only in writing and similarly waived or extended the required completion date, this conduct could not have waived DOL's sovereign immunity." Id. at 82 (2). The Court explained that although

> private parties . . . may be able to modify and extend written contracts by manifesting their intent to do so even without a written agreement, the enforceability of a contract against the [S]tate is governed by the Constitution and by statute. . . . General rules of contract law that might otherwise support a claim for breach of contract damages between private parties, however, will not support a claim against the [S]tate or one of its agencies if the contract is not in writing so as to trigger the waiver of sovereign immunity.

(Citations omitted.) Id. at 82 (2).

Unlike the written contract in *RTT Assocs., Inc.*, supra, the written contract in the instant case provides a procedure for obtaining a written Change Order to amend the contract, and that procedure provides a method by which parties can bypass the

10

necessity for a written Change Order approved by the Board of Commissioners in the event "extraordinary circumstances" warrant it. The trial court, in its motion denying the County's motion for summary judgment, found that the parties complied with Fulton Procedure 800-6 G (2) because the changed work ordered by County administrators were necessary to avoid delay to the "critical path schedule of the work[,]" and thus constituted "extraordinary circumstances" which invoked an exception to the written change order requirement under Fulton Procedure 800-6 G (2), as incorporated into the parties' contract.

However, Fulton Procedure 800-6 G (2), captioned "Extraordinary Circumstances[,]" provides a specific procedure that must be followed in order to bypass the contractual requirement that any changes be made by a written Change Order. Specifically, Fulton Procedure 800-6 G (2) provides that "[t]he County Manager is authorized to approve change orders regardless of the amount when due to extraordinary circumstances, work must be implemented before the Board of Commissioners can act." These extraordinary circumstances include, inter alia, when immediate action must be taken to protect the County's interest due to a threat of "[l]oss of substantial resources due to delay, including delay to critical path schedule."

11

Fulton Procedure 800-6 G (2) (d) provides that "[a]t a minimum, the following procedures must be observed" in the event such an extraordinary circumstance warranted it:

(i) The contractor shall execute a written contract Modification that clearly describes the work to be done and its cost. If costs cannot be fully detailed due to the exigencies of the situation, the Modification must set out a maximum cost and state that the cost will be definitized in a final change order.

(ii) The department head shall obtain the approval of the Purchasing Agent prior to submitting the change order to the County Manager.

(iii) The work may proceed upon approval of the County Manager. The department head shall prepare all other documentation normally required for a change order, including completion of the Sign-Off sheet.

(iv) No later than sixty (60) days following approval of the change order, the County Manager shall place the change order on the consent agenda.

(v) In cases of change orders without definitized costs under Subsection (i) above, the department head shall commence processing a final change order as soon as circumstances permit.

In the instant case, SOCO argues that the County ordered more than 30 modifications to the existing budget and time line under the Contract. SOCO's appellate brief provided no citations to the voluminous record that it complied with these provisions. However, for the first time on Motion for Reconsideration, SOCO provides citations to the record to change orders that it submitted to the County.[2] However, SOCO still provides no citations to the record indicating that the remaining subsections of Procedure 800-6 G (2) (d) were complied with. Although it appears that Freddie Robinson, the Project Manager assigned to the community center project, made handwritten notations on these proposed change orders, there is no evidence that the approval of the Purchasing Agent was obtained prior to submitting the change orders to the County Manager or that the County Manager approved the work as required by Procedure 800-6 G (2) (d) (iii). Further, it does not appear that the trial court considered whether each subsection of the "extraordinary circumstances" procedure set forth in Procedure 800-6 G (2) (d) was complied with.

Although SOCO's appellate brief relied upon Requests for Admissions deemed admitted by the County's failure to timely respond to them, such evidence cannot be

---

[2] This opinion has been substituted for the original opinion issued by this Court.

13

the basis of our decision on sovereign immunity. As our Supreme Court noted in *RTT Assocs.*, supra, sovereign immunity cannot be waived by the County's actions outside of the written contract, and this "rule would apply to any admissions made by [the County] that the contract had been extended, when the evidence shows any agreements to extend did not meet the written contract requirement set forth in the applicable statute and constitutional provision relating to the waiver of sovereign immunity." Id. at 87 (3). The constitutional provision "expressly reserving the power to waive sovereign immunity to the legislature does not allow for exceptions to be created by the courts." (Citation and punctuation omitted.) Id. Accordingly, this Court cannot create an exception to the rules regarding the waiver of sovereign immunity based upon any reliance that SOCO may have placed on the County's request for changes, upon the parties' course of conduct, or upon facts deemed admitted pursuant to OCGA § 9-11-36 (a).

Accordingly, we vacate the trial court's denial of the County's motion for summary judgment on all of SOCO's claims arising from modifications of the May 2013 contract and remand the case for further consideration of whether the parties strictly complied with Fulton Procedure 800-6 G (2) (d).

14

2. The County argues that the trial court erred in denying its motion to withdraw admissions and in denying its motion for reconsideration of that denial. The County argues that the trial court misapplied OCGA § 9-11-36 (b) and that the trial court should not have deemed certain requests for admissions admitted, as they are based on inappropriate legal conclusions. For the following reasons, we affirm in part and reverse in part.[3]

Under Georgia law,

[a] party's failure to timely respond to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests. This is true even if the requested admissions require opinions or conclusions of law, so long as the legal conclusions relate to the facts of the case. The language in OCGA § 9-11-36 (a) is clear, unambiguous, and unequivocal and means just what it says. One must comply strictly and literally with the terms of the statute upon the peril of having his response construed to be an admission. Thus, matters deemed admitted under this statute become solemn admissions in judicio and are conclusive as a matter of law on the matters stated and cannot be contradicted by other evidence unless the admissions are withdrawn or amended on formal motion.

---

[3] As found in Division 1 herein, we have concluded that the admissions do not act as a waiver on sovereign immunity for claims related to the alleged modifications. Our analysis herein relates to admissions related to the original written contract.

(Citation omitted.) *Adewumi,* supra at 277 (2).

The trial court is vested with broad discretion to permit withdrawal, and "the trial court's ruling on this issue may be reversed only upon a showing of abuse of discretion." (Citation omitted.) *Parham v. Weldon*, 333 Ga. App. 744, 746 (1) (776 SE2d 826) (2015).

(a) The County argues that the trial court abused its discretion by "grossly misapplying" OCGA § 9-11-36 (b)'s two-part test.

There is a two-pronged test to be employed when considering a motion to withdraw admissions. A court *may* grant a motion to withdraw when "[1] the presentation of the merits of the action will be subserved thereby and [2] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." OCGA § 9-11-36 (b). Accord *Parham,* supra at 746 (1). "If the movant satisfies the court on the first prong, the burden is on the respondent to satisfy the second prong. Both prongs must be established, pursuant to the standard provided in OCGA § 9-11-36 (b)." (Citation and punctuation omitted.) *Marlowe v. Lott*, 212 Ga. App. 679, 681 (2) (442 SE2d 487) (1994). "If the movant fails to make the required showing to satisfy the first prong of the test, then the trial court is authorized to deny the motion to withdraw the

16

admissions." (Citations omitted.) *Turner v. Mize*, 280 Ga. App. 256, 257 (1) (633 SE2d 641) (2006).

To prove that the presentation of the merits in this case would be subserved by the withdrawal, the County needed to establish that

> the admitted requests either could have been refuted on trial of the issues by admissible evidence having a modicum of credibility or that the admitted requests were incredible on their face; and that the denials being tendered to the court with the motion to withdraw had not been offered solely for the purposes of delay.

(Citations omitted.) *Fox Run Properties, LLC v. Murray*, 288 Ga. App. 568, 570-571 (1) (654 SE2d 676) (2007). "The first prong of the test is not perfunctorily satisfied[,] and the desire to have a trial, standing alone, is not sufficient to satisfy the test." (Citation and punctuation omitted.) *Turner,* supra at 257 (1).

In support of its motion to withdraw admissions, the County relied upon the affidavit of Freddie Robinson. The trial court's order found that the County did not meet its initial burden of showing that presentations of the merits of the action would be subserved by withdrawal of the admissions. Specifically, the trial court found that

> the affidavit of County construction manager Freddie Robinson proffered by the County in support of its motion to withdraw its admissions was insufficient to support their withdrawal, in part, because

17

*it lacked even a modicum of credibility*. It contained facially contradictory statements, material misstatements on basic elements of the contract, miscounting of performance days, and other statements that contradict documents in the record and the County's own answers to Interrogatories.

(Emphasis supplied.) The trial court further found that the County failed to credibly refute specific admitted requests.[4]

The County argues in its brief that its supporting affidavit had a sufficient modicum of credibility. However, the trial court, after examining the affidavit in detail, found the issue not to be one of degree of credibility, but rather, of the utter absence of it. Robinson's affidavit directly contradicted the County's responses to various interrogatories. When asked in Interrogatory 5 why it issued no change orders and why payment was withheld from SOCO, the County answered that "SOCO has refused to amicably negotiate proposed field changes to a final reconciled amount." In his affidavit, however, Robinson attributes the refusal to issue change orders to several different reasons, including: SOCO's improper management and failure to

___

[4] In its motion for reconsideration of the trial court's denial of the County's motion to withdraw admissions, the County filed the affidavit of Felicia Strong-Whittaker. However, Strong-Whittaker's affidavit was not filed until after the trial court denied the County's motion to withdraw the admissions. The trial court similarly found Strong-Whittaker's affidavit to be lacking in credibility.

protect the site during bad weather; superintendent burnout; and poor SOCO staffing. Further, Robinson miscounted performance days to calculate the completion date of the project, and his affidavit contradicts evidence in the record without explanation. Robinson averred that the project was only 50 percent complete on March 31, 2014, but reports by his superiors show that the project was 65 percent complete two weeks before that date and 80 percent complete two weeks after it. "Based on these inconsistencies, the trial court was . . . authorized to find that [Robinson] lacked credibility and that the admissions were not false." (Footnote omitted.) *Fox Run Properties, LLC,* supra at 571 (1) (trial court did not err in denying motion to withdraw admissions when supporting affidavit was deemed unreliable because it contradicted interrogatories and contained inconsistent statements).

"Under these circumstances, we cannot conclude that the trial court abused its discretion in concluding that [the County] did not present credible evidence to refute the admissions." (Citations omitted.) Id. Compare *Bailey v. Chase Third Century Leasing Co., Inc.*, 211 Ga. App. 60, 61-62 (1) (438 SE2d 172) (1993) (trial court abused its discretion by denying a motion to withdraw admissions in the face of a sworn affidavit and other admissible evidence that cast doubt on the veracity of the admissions).

19

Because the trial court did not err in concluding that the County had not satisfied its burden in the first prong of this test, we need not address the second prong. *Turner*, supra at 257 (1).

(b) The County next argues that the trial court should have withdrawn Admissions Nos. 23, 36 and 37 on the grounds that they are based on inappropriate legal conclusions.

(i) We find no error as to Requests for Admissions Nos. 23 and 36. Request for Admission No. 23 asks the County to admit that SOCO "fully performed its obligations under the contract[.]" Request for Admission No. 36 asks the County to admit that "Fulton County acted with bad faith intentionally, with malice, and with intent to do harm to SOCO in the County's administration of the Contract." Requests for admissions requiring opinions or conclusions of law are specifically permitted, as long as the legal conclusions relate to the facts of the case. *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327, 329 (1) (486 SE2d 810) (1997). See also *State Dept. of Corrections v. Developers Surety & Indemity Co.*, 291 Ga. 741 (763 SE2d 868) (2016) (affirmed on cert. by *State Dept. of Corrections v. Developers Surety & Indemnity Co.*, 324 Ga. App. 371 (750 SE2d 697) (2013) (matters deemed admitted by the Georgia Department of Corrections as a matter of law established that

20

it materially breached its contract with a government contractor for re-roofing certain buildings). Requests are not objectionable because they seek admission of the ultimate issue in the case but are only objectionable if they seek admission of purely abstract principles unrelated to the facts of the case. *G. H. Bass & Co.*, supra at 328 (1). A determination of whether the County acted with bad faith is not such an abstract proposition of law.

(ii) The County argues that the trial court should have withdrawn Request for Admission No. 37. We agree.

Request for Admission No. 37 asks the County to admit that "Fulton County is liable to SOCO for each of the damages pleaded and prayed for in its Complaint." The damages prayed for in the Complaint included, inter alia, "pre-judgment interest of at least $25,866.22" on funds that SOCO claims the County unlawfully withheld, "damages in excess of $406,732.53" resulting from the "County's refusal to administer change orders and compensate SOCO for acceleration of the work"; "damages in excess of $25,000.00" for the County's interference with SOCO's subcontractors; "327,756.99 for unabsorbable extended home office expense," and "$638,876.50 due to profit on federal work lost as a result of Fulton County's

21

wrongful withholding or retainage and intentional delay of project closeout and the resultant loss of bonding capacity[.]"

The trial court should have withdrawn Request for Admission No. 37 because some of the damages sought in the complaint, such as SOCO's lost profits claim, are outside the County's realm of knowledge. "While admissions resulting from a party's failure to respond to requests for admission are . . . generally considered conclusive until withdrawn . . . , a party obviously has not the capacity to admit something which is patently outside the realm of his knowledge." (Citations omitted.) *Cole v. Smith*, 182 Ga. App. 59, 63 (3) (354 SE2d 835) (1987). Accord *K-Mart Corp. v. Hackett*, 237 Ga. App. 127, 133 (4) (514 SE2d 884) (1999) (trial court did not abuse its discretion in allowing admission that defendant injured each plaintiff in the amount of $2,500,000.00 because the answer was outside the knowledge of the defendant). Further, some of the damages sought in the complaint arose from causes of action related to the unwritten change orders on which the County claims it is entitled to sovereign immunity.[5]

---

[5] We acknowledge that if the trial court finds upon remand that SOCO and the County had properly acted to approve change orders under the "extraordinary circumstances" provision, then sovereign immunity would be of no concern here.

22

3. The County argues that the trial court erred in awarding attorney fees as part of the summary judgment order. For the following reasons, we vacate and remand the trial court's award of attorney fees.

The trial court's summary judgment order found that the County was liable for "reasonable attorneys' fees and litigation costs as SOCO has incurred since this lawsuit was filed on May 8, 2015[,]" and directed SOCO to submit a statement of such costs to the Court and to Fulton County within 21 days from the order, and gave the County 10 days in which to make specific objections to SOCO's statement of fees. In Division 1, supra, we vacate and remand the trial court's denial of the County's motion for summary judgment on SOCO's causes of action arising from the modifications to the original contract made without written change orders. Because some of the Code Sections and conduct that the trial court bases its attorney fees awards upon might be affected by its reconsideration, on remand, regarding the sovereign immunity issue, we vacate those awards of attorney fees and remand to the trial court for further consideration in light of this order. See, e. g., *Aaron v. Ga. Farm Bureau Mut. Ins. Co.*, 297 Ga. App. 403, 408 (c) (677 SE2d 419) (2009) (since appellant "cannot succeed on his breach of contract . . . claims, he likewise cannot succeed on a claim for attorney fees") (footnote omitted).

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded. Dillard, C. J., and Self, J., concur.*

23