**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 11, 2026**

# In the Court of Appeals of Georgia

A25A1540. SCHMITT v. DAVIS et al.

A25A1541. BROWN v. SCHMITT.

A25A1542. DAVIS et al. v. SCHMITT.

PIPKIN, Judge.

Appellants Gary Davis and Meribeth P. Davis unsuccessfully sued Appellee Barbara Schmitt in Fulton County Superior Court, and Schmitt then filed a motion for a fee award pursuant to OCGA § 9-15-14(a) and (b). The superior court granted the motion in part, ordering the Davises, along with their attorney, Heather Brown, to reimburse Schmitt a portion of her attorney fees and expenses of litigation pursuant to OCGA § 9-15-14(b) only. Schmitt now appeals this order, arguing that the trial court erred by denying her request for a fee award pursuant to OCGA § 9-15-14(a) and by awarding her only a portion of her requested fees pursuant to OCGA § 9-15-14(b).

The Davises and Brown have filed cross-appeals, asserting, among other things, that the trial court erred because the sanctioned conduct did not lack substantial justification as that term is used in OCGA § 9-15-14(b). As explained below, we conclude that the trial court properly determined that Schmitt was not entitled to attorney fees and expenses of litigation pursuant to OCGA § 9-15-14(a) as a matter of law and properly rejected her contention that she was entitled to a fee award for the entirety of the litigation pursuant to OCGA § 9-15-14(b). We also conclude that the litigation tactics identified by the trial court in its fee award do not amount to sanctionable conduct under OCGA § 9-15-14(b) as a matter of law. Consequently, the judgment of the trial court is affirmed to the extent that it denied Schmitt's request for a fee award pursuant to OCGA § 9-15-14(a), and it is reversed to the extent that it awarded Schmitt attorney fees and expenses of litigation pursuant to OCGA § 9-15-14(b).

1. In order to appropriately evaluate the fee award here, we must first delve into the extensive procedural history of this case. In January 2023, the Davises, represented by Brown, filed a seven-count complaint against numerous parties, including Schmitt, arising from the mistaken removal and disposal of personal

property from a storage unit owned by the Davises. According to the complaint, the Davises are the owners and residents of a unit (hereinafter "Unit A") in a high-rise condominium called The Phoenix on Peachtree. At the time the Davises purchased their residential unit, a separate storage unit in the building was also deeded to them ("SU 402"). The couple used the storage space to hold extensive personal property, including a vinyl record collection, collectable figures, sports memorabilia, recreation equipment, and other personal items. The complaint alleges that, at some point, a separate residential unit in their building (hereinafter "Unit B") was sold -- with Schmitt acting as the listing agent -- and that SU 402 was mistakenly conveyed by the seller to the new owners during that transaction. As alleged in the complaint, "one or more of the [d]efendants had a key made to" the storage unit and subsequently "removed and/or disposed of the contents which the Davises had secured and stored therein."

As to Schmitt, the complaint asserts claims of conversion, as well as civil trespass and interference with enjoyment of personal property; the Davises sought compensatory and punitive damages, as well as attorney fees and expenses of litigation. Schmitt answered and filed cross-claims and counterclaims.

In March 2023, Schmitt served the Davises with various discovery requests -- including a request for admissions pursuant to OCGA § 9-11-36 -- and the two parties began settlement negotiations. On April 4, 2023, the parties' attorneys exchanged the following emails concerning a settlement ("the April 4 emails"). Counsel for the Davises wrote, in relevant part, as follows:

> I spoke with my clients [the Davises] about dismissing [Schmitt] from the lawsuit[,] and they are willing to do so in exchange for her agreement to dismiss her claims against them and to cooperate as a witness in the case against The Phoenix and, if necessary, against [the layperson who assisted Schmitt with the condo sale]. Please confirm her agreement. If she agrees, please forward a mutual release confirming the parties' agreement. Upon signature, we can file a joint dismissal with the court.

Just hours later, the attorney representing Schmitt responded, in relevant part, as follows:

> [Schmitt] is willing to dismiss her claims against [the Davises], and cooperate as a witness, in accordance with the facts alleged in her pleadings. She will of course tell the truth but will not place blame on [the layperson] as she has no knowledge as to [his] actions. . . . . I will forward a mutual release and dismissal for your review.

Several weeks later, as the time for Schmitt to testify approached, her counsel sent an email to the Davises which reads, in relevant part, as follows:

[Schmitt] will not be present at the hearing. But even if she were she has nothing to say. She was never in SU402 and never saw the contents. She only saw the larger [u]nit. Please let me know when you will be dismissing [Schmitt] from the case, and she will dismiss her counterclaims when you do so. *Please note that your discovery responses are now past due and therefore all the [r]equests for [a]dmissions are deemed admitted. If you don't dismiss [Schmitt] by May 8, 2023, we will file a motion for summary judgment and request attorney fees and expenses of litigation, as well as damages.*

(Emphasis supplied.) Counsel for the Davises then responded, in relevant part, as follows:

Our discussion and agreement as to dismissing [Schmitt] was that she would cooperate as a witness for my clients at the damages hearing, which would require her appearance at the hearing. She has knowledge of the representations made to her by [the condo association about the storage unit], which is relevant to the damages hearing. Also, your comment regarding discovery is misplaced given our agreement regarding your client. I am astonished at the tone of this response and take it that your client no longer intends to cooperate as agreed?

Counsel for Schmitt subsequently responded, in relevant part, "I disagree with your message." In the months that followed, the respective attorneys conferred by telephone and through additional email correspondence, but they never executed a formal settlement agreement, a mutual release, or joint dismissals.

True to her warning, on July 17, 2023, Schmitt moved for summary judgment. In her motion, Schmitt alleged that the Davises had failed to produce evidence

identifying which party had disposed of the storage-unit property, and that, at any rate, the Davises' failure to respond to Schmitt's request for admissions was fatal to their action against her.[1] Specifically, Schmitt highlighted that the following admissions, among others, were deemed admitted as a matter of law as a consequence of the Davises' failure to respond to Schmitt's request for admissions:

> 1. You are aware of no direct evidence that [Schmitt] personally removed any of the personalty from SU402.

> 2. You are aware of no direct evidence that [Schmitt] personally directed anyone to remove any of the personalty from SU402.

> 3. You are aware of no direct evidence that [Schmitt] ever had any knowledge that any person intended to remove any of the personalty from SU402.

---

[1] In an affidavit attached to her motion for summary judgment, Schmitt detailed her involvement in the storage-unit fiasco. Schmitt explained that, during the course of acting as the listing agent for the sale of Unit B, she merely asked a representative of the condominium to identify the storage unit associated with Unit B; the condominium representative, she says, identified SU 402 as the relevant storage unit. According to Schmitt, she reasonably relied on this representation and merely relayed this information to the individual acting as a lay representative for the sellers, who by then had moved to Europe; she then asked that individual to have a key made to the storage unit. In her affidavit, Schmitt attested that she had no involvement with the storage unit; that she did not obtain or possess a key to the unit; that she did not access the unit; that she did not allow or instruct anyone else to enter the storage unit; and that she never possessed, interfered with, or removed any property from the storage unit.

4. You are aware of no direct evidence that [Schmitt] ever had a key to SU402.

5. You are aware of no direct evidence to show who allegedly removed the personalty from SU402.

. . . .

8. Your claims against [Schmitt] are based entirely on circumstantial evidence.

9. Your claims against [Schmitt] are based entirely on your personal belief or supposition.

. . . .

23. You are aware of no direct evidence to show that . . . Schmitt actually gave anyone permission to enter SU402.

24. You are aware of no direct evidence to show that . . . Schmitt had knowledge that anyone intended to remove any items of personalty from SU402.

. . . .

*34. Based on the facts admitted in your responses to the foregoing requests for admissions, it could not be reasonably believed that a court would accept your claims against [Schmitt].*

*35. Based on the facts admitted in your responses to the foregoing requests for admissions, [your] claims against [Schmitt] lack substantial justification.*

(Emphasis supplied.) Schmitt asserted that she was entitled to summary judgment in light of both the lack of evidence supporting the Davises' claims and their admissions. In addition to the motion for summary judgment, Schmitt also moved for sanctions pursuant to OCGA § 9-11-37.

The record reflects that the parties agreed that the Davises could have until August 28, 2023, to file a response to the motion for summary judgment. In the meantime, the Davises filed the following: "Plaintiff's Motion to Enforce Settlement Agreement and for Attorneys' fees and costs pursuant to OCGA § 9-15-14, or, in the Alternative, Motion to Withdraw Admissions, for Additional Time to Respond to Discovery, [and] Motion to Strike Motion for Summary Judgment." In that filing, the Davises asserted, through counsel, that no formal document was required to establish a binding settlement agreement between parties and that the April 4 emails -- in which the parties mutually agreed to dismiss their claims against one another in exchange for Schmitt's cooperation with respect to damages -- created just such an agreement. The Davises argued in the alternative that they should be allowed to withdraw their admissions because they had acted under the good faith belief that they had reached a settlement with Schmitt and, consequently, that responding to the requests for

8

admissions was unnecessary. Finally, the Davises contended that, in the event that their admissions were withdrawn, that Schmitt's motion for summary judgment should be stricken because it was premised on the unanswered admissions.

Then, on August 24, 2023 -- while their motion to enforce was pending and several days before their summary judgment response was due -- the Davises moved the trial court for an additional 14 days in which to respond to Schmitt's pending motions for summary judgment and for sanctions. In that motion, the Davises argued, among other things, that Schmitt's motions for summary judgment and for sanctions would be rendered moot if the trial court were to grant the Davises' motion to enforce settlement. The Davises also noted that they -- along with a separate defendant -- had asked to extend discovery as to all parties, which might also affect the resolution of Schmitt's summary judgment motion.

In response to the motion to enforce, Schmitt argued that the Davises had failed to establish the requirements for an enforceable agreement. Schmitt asserted that she had not "unconditionally" accepted the Davises' offer, but, instead, that she had "rejected it" by stating that she would not place blame on the layperson, by stating that she would "testify in accordance with the facts alleged in her pleadings," and by

failing to forward a mutual release confirming the agreement. She further asserted that, despite repeated attempts to finalize a mutual release with opposing counsel, the parties never signed an agreement. The trial court adopted Schmitt's position, denying Davises' motion to enforce the settlement agreement and to withdraw admissions, as well as granting Schmitt's motion for summary judgment. The Davises appealed this order, and this Court affirmed the judgment of the trial court in accordance with Court of Appeals Rule 36. See *Davis v. The Phoenix on Peachtree Condo. Ass'n*, A24A0633 (Ga. App. Aug. 19, 2024).

Following this Court's decision, Schmitt moved for attorney fees and expenses of litigation pursuant to OCGA § 9-15-14 (a) and (b). Relying on the unanswered requests for admissions, Schmitt asserted that she was entitled to an award pursuant to OCGA § 9-15-14 (a) because, she said, the Davises "are deemed to have admitted all matters requested in [the request for admissions] due to their failure to serve a timely response," including the admissions that "they had no evidence to support their claims against [Schmitt]" and that "it could not be reasonably believed that a court would accept your claims against [Schmitt]." Likewise, Schmitt asserted that she was entitled to an award pursuant to OCGA § 9-15-14 (b) because, again, the

Davises were deemed to have admitted all the matters included in the request for admissions, including the admission that their claims against Schmitt "lack[ed] substantial justification."

Following a hearing, the trial court granted Schmitt's motion in part and denied it in part. As to Schmitt's request for a fee award pursuant to OCGA § 9-15-14 (a), the trial court concluded that the Davises' admissions, though relevant to summary judgment, "are not entirely dispositive of [Schmitt's] claim for attorney fees." The trial court reasoned that the admissions could not "retroactively negate a justiciable issue that may have existed at the time of asserting the claim and that may have been accepted by the [c]ourt." As to a fee award pursuant to OCGA § 9-15-14 (b), the trial court concluded as follows:

> At least by July 2023, Plaintiffs -- and certainly their counsel -- knew that no settlement agreement had been finalized, that admissions had gone unanswered, and that a dispositive motion was pending. Despite this, Plaintiff's counsel filed a motion to enforce settlement and an untimely motion to extend the time to file an (already overdue) response to Schmitt's [m]otion for [s]ummary [j]udgment. In the context of this case and given the tenuous nature of the claims against Schmitt, these filings lacked substantial justification and appear to this court intended only for the purpose of delaying the proceedings. These filings had the added effect of unnecessarily expanding the proceedings, requiring Defendant Schmitt to respond to a lengthy set of filings seeking varied and disparate

relief -- including seeking to strike the pending summary judgment motion.

Based on the billing records supplied by Schmitt's counsel at the motion hearing -- and without further elaboration -- the trial court awarded Schmitt $23,771 in fees and expenses against both the Davises and their attorney. These appeals now follow.

*Case No. A25A1540*

In six inter-related enumerations of error, Schmitt asserts that the trial court erred by denying -- or in only partially granting -- her request for attorney fees and expenses of litigation pursuant to OCGA § 9-15-14 (a) and (b). We address these arguments below.

2. In her first two enumerations of error, Schmitt asserts that, in denying her request for a fee award pursuant to OCGA § 9-15-14 (a), the trial court "disregarded the conclusive effect of the Davises' judicial admissions" and "erred in its considerations of alleged facts that contradicted the Davises' judicial admissions." Because these enumerations concern only a question of law, we review them de novo. See *Stewart Ausband Enterprises v. Holden*, 349 Ga. App. 295, 297 (1) (826 SE2d 138) (2019).

In admission 34, which tracks the language of OCGA § 9-15-14 (a),[2] the Davises purportedly admitted, as a matter of law, that "it could not be reasonably believed that a court would accept your claims against [Schmitt]." Schmitt asserts on appeal, as she did below, that this is an *in judicio* admission which cannot be contradicted by other evidence and that demands the conclusion that she was entitled to a fee award pursuant to OCGA § 9-15-14 (a). We disagree, for a number of reasons.

"It is well settled that a party's failure to timely respond to requests for admission conclusively establishes as a matter of law each of the matters addressed in the requests." *Robinson v. Global Res.*, 300 Ga. App. 139, 140 (684 SE2d 104) (2009). "This is true even if the requested admissions require opinions or conclusions of law, *so long as the legal conclusions relate to the facts of the case*." (Emphasis supplied.) *Fox*

---

[2]OCGA § 9-15-14 (a) provides, in relevant part, as follows:

> In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that *it could not be reasonably believed that a court would accept the asserted claim*, defense, or other position.

(Emphasis supplied.)

*Run Properties v. Murray*, 288 Ga. App. 568, 569 (1) (654 SE2d 676) (2007). However, a request for admission is improper where it seeks only the "admission of purely abstract principles unrelated to the facts of the case." *Fulton County v. SOCO Contracting Co.*, 343 Ga. App. 889, 899 (2) (b) (i) (808 SE2d 891) (2017). As to admission 34, whether a *court* would accept the Davises' claims against Schmitt is not a legal conclusion speaking to the operative facts of the case; instead, it calls for nothing more than speculation about what legal conclusion a court might reach regarding the Davises' claim. This is not the type of legal conclusion that creates an *in judicio* admission. Compare Id. (requests for admission properly asked defendant to admit that plaintiff fully performed its obligation under the contract and that defendant had acted in bad faith); *McClarty v. Trigild Inc.*, 333 Ga. App. 112, 115 (2) (775 SE2d 597) (2015) (request for admission from property owner that "there was a hazardous condition" on the premises leading to the plaintiff's injury was within the scope of permissible requests for admissions); *Brown v. Morton*, 274 Ga. App. 208, 211 (2) (617 SE2d 198) (2005) (unanswered admission that defendants conspired to defraud plaintiff resulted in *in judicio* admission that was admissible to support the grant of summary judgment).

14

As we have explained before, "the purpose of requests for admissions is to expedite trial and clarify the issues in a case, not gain tactical advantage over an opponent." *Brankovic v. Snyder*, 259 Ga. App. 579, 582 (578 SE2d 203) (2003). Admission 34 -- which appears designed solely for the purpose of prevailing on a subsequent motion for attorney fees -- does "not subserve the merits." *Rowland v. Tsay*, 213 Ga. App. 679, 681 (1) (445 SE2d 822) (1994) (citation modified).

Even if our conclusion as to the legal import of admission 34 were precluded based on the Davises' failure to respond,[3] the trial court's ultimate conclusion is still sound. We have found no legal authority -- and Schmitt has certainly cited none -- that authorizes a defendant to use a request for admission in an effort to secure an "automatic" fee award pursuant to OCGA § 9-15-14. Indeed, such an effort would subvert the responsibility of a trial court to independently assess the appropriateness of such an award, see, e.g., *DeRossett Enterprises v. Gen. Elec. Cap.*, 275 Ga. App. 728(4) (621 SE2d 755) (2005) (recognizing that, before awarding fees pursuant to OCGA § 9-15-14, a trial court is required to conduct a hearing and make specific

---

[3] See *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327, 330(2) (486 SE2d 810) (1997) (not addressing whether requests for admission were proper where defendants failed to "respond, assert objections, request deferment of its obligation to respond to the requests, or seek a protective order").

findings of fact); it would allow a party to use a request for admission as a means to automatically receive a fee award pursuant to OCGA § 9-15-14 without regard for the statutory parameters of such an award, see *Bishop v. Goins*, 305 Ga. 310, 311-12 (824 SE2d 369) (2019) (recognizing that, generally speaking, an award of attorney fees must be authorized by statute or contract and that statutes authorizing the award of such fees must be strictly construed); and it would run counter to the purpose of OCGA § 9-15-14, which is to "punish and deter litigation abuses," see *Trabue v. Hanson*, ____ Ga. App. ____, ____ (2) (922 SE2d 684) (2025).

Consequently, Schmitt's arguments are unavailing, and these enumerations offer no basis for relief.

3. In her third enumeration of error, Schmitt asserts that the trial court disregarded the law of the case when it denied her request for a fee award pursuant to OCGA § 9-15-14. There is no merit to this argument.

In order to address Schmitt's argument, we must return to the procedural history, at least as Schmitt sees it. According to Schmitt, the Davises were unsuccessful in their attempt to withdraw their admissions because, she says, the trial court determined that the Davises had failed to identify evidence that had a

"modicum of credibility."[4] Schmitt also points out that, when she was granted summary judgment, the trial court noted in its order that Schmitt had "denied unequivocally having anything to do with the alleged removal of [the Davises'] belongings" and that Schmitt's denial was "uncontradicted" by any other evidence. On appeal, Schmitt reasons that this Court implicitly affirmed the trial court's "uncontradicted-evidence" and "modicum-of-evidence" determinations when this matter was previously before this Court -- thus becoming law of the case -- which, she says, necessarily supports her request for a fee award pursuant to OCGA § 9-15-14.

As an initial matter, this Court affirmed the prior appeal without opinion, and, in the absence of an express ruling on either issue, the law of the case doctrine does not apply. See *Hall v. Hill*, 366 Ga. App. 285 (882 SE2d 34) (2022) (recognizing that "the law of the case rule does not apply absent an express ruling on the issue in question"). Moreover, the record does not support Schmitt's argument. As to the "modicum-of-credible-evidence" determination, a review of the relevant order

---

[4] See, e.g., *WellPath* v. Cox, 370 Ga. App. 800, 803-04(1) (897 SE2d 78) (2024) (highlighting the two pronged test to be employed when considering a motion to withdraw admissions and explaining that, under the first prong, "the moving party must show that the admitted requests either were refutable by admissible evidence having a *modicum of credibility* or were incredible on their face" (emphasis supplied; citation modified)).

17

reveals that the trial court merely concluded that the Davises had failed to meet the procedural burden to withdraw their admissions. Indeed, as Schmitt acknowledges on appeal, the basis of the Davises' motion to withdraw was that Schmitt would not be prejudiced and that the Davises had relied in good faith on the parties having reached a settlement agreement; as the trial court properly recognized, such a position did not satisfy the procedural requirements to withdraw the admissions, which was fatal to the Davises' motion. Likewise, the earlier finding that Schmitt had nothing to do "with the alleged removal of [the Davises'] belongings" neither automatically entitled Schmitt to attorney fees nor undermined the trial court's ultimate conclusion on her request for attorney fees. Accordingly, this enumeration presents no basis for reversal.

4. Schmitt asserts in her fourth enumeration that "[t]he trial court erred in speculating that there 'may' have been a justiciable issue at the time [that] the [Davises'] lawsuit was filed." This enumeration offers no basis for reversal.

As explained above, Schmitt argued below -- as she has on appeal -- that she was automatically entitled to attorney fees pursuant to OCGA § 9-15-14(a) as a consequence of admission 34. The language about which Schmitt complains from the trial court's order is simply a response to her argument, stating as follows: "This

18

Court is not persuaded that deemed admissions retroactively negate a justiciable issue that may have existed at the time of asserting the claim and that may have been accepted by the Court." Thus, the trial court is not speculating "that there 'may' have been a justiciable issue," as Schmitt urges, but, instead, this language reflects that the trial court merely concluded that admission 34 could not retroactively undermine any possible justiciable issue existing at the time that the Davises asserted their claims.

5. In her fifth enumeration, Schmitt asserts -- with a single paragraph of argument -- that the trial court erred in denying her request for a fee award pursuant to OCGA § 9-15-14 (a). We disagree.

"Pursuant to OCGA § 9-15-14 (a), the trial court shall award attorney fees when a party asserted a claim, defense or other position with such a complete absence of any justiciable issue of law or fact that the party could not reasonably have believed that the court would accept it." *Shoenthal v. DeKalb County Employees Retirement System Pension Bd.*, 343 Ga. App. 27, 30 (805 SE2d 650) (2017) (citation modified). As we have explained, before

> [i]nherent in a ruling of the trial court denying attorney fees under OCGA § 9–15–14(a) is a determination that there does *not* exist such a

19

> complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.

*Rescigno v. Vesali*, 306 Ga. App. 610, 615(4) (703 SE2d 65) (2010). This Court will affirm the decision to deny a fee award under OCGA § 9-15-14(a) if there is any evidence to support it. *Rescigno*, 306 Ga. App. at 615(4).

While Schmitt emphatically asserts that she played no role in the storage-unit fiasco -- and that the Davises' claims were speculative and conclusory -- the record simply does not support her position. According to Schmitt's own account of events, she played a central role in the circumstances giving rise to the storage-unit incident, including the following: Schmitt was hired to market Unit B by the owners of the unit; she obtained information as to which storage unit was associated with Unit B from a third party without checking the corresponding public records or, apparently, consulting her clients; she passed this erroneous information to a layperson who was helping to facilitate the sale of Unit B for the out-of-country sellers; and she then advised the layperson to "obtain a key" to the storage unit. In sum, Schmitt obtained inaccurate information and then directed a third party -- who was operating on behalf of the out-of-country sellers who hired Schmitt -- to act on this information, including

securing a key to real property that was owned by the Davises; shortly after the sale of the property, the Davises' storage unit was emptied by an unknown party.

While Schmitt later averred "without contradiction" that she "reasonably relied" on the storage unit information supplied to her and that she played no role in the removal of the Davises' belongings from SU 402, her own filings -- indeed the request for admissions to which the Davises failed to respond -- reflect that she understood that the Davises had, at the very least, a circumstantial case against her. That the Davises were unable to fully substantiate their claims against Schmitt and that Schmitt ultimately prevailed on her summary judgment motion does not mandate an award of attorney fees under OCGA § 9-15-14 (a). See, e.g., *Shoenthal*, 343 Ga. App. at 30. Because there was evidence to support the trial court's determination that the Davises' claims "did not rise to the level of showing a *complete* absence of any justiciable issue of law or fact," we must affirm the trial court's denial of fees pursuant to OCGA § 9-15-14 (a). (Emphasis in original.) *Chadwick v. Brazell*, 331 Ga. App. 373, 382 (5) (771 SE2d 75) (2015).

6. Finally, in her sixth enumeration -- which, again, is supported by nothing more than a few sentences of argument -- Schmitt asserts that the trial court erred in

21

not awarding fees "for the entire case under OCGA § 9-15-14 (b)." We review such a claim for abuse of discretion. See *Chadwick*, 331 Ga. App. at 381 (5). While Schmitt contends, again, that the Davises' claims were conclusory and speculative -- and could not withstand her motion for summary judgment -- given the facts and circumstances described in Division 5, we cannot say that the trial court abused its discretion in failing to award Schmitt a fee award under OCGA § 9-15-14 (b) for the entirety of the litigation.

*Case Nos. A25A1541 & A25A1542*[5]

7. In their respective cross-appeals, the Davises and Brown both assert, among other things, that the litigation tactics for which the trial court awarded fees pursuant to OCGA § 9-15-14 (b) did not lack substantial justification and, thus, that the fee award was improper. We agree.

---

[5] As explained above, the trial court awarded fees in favor of Schmitt against both the Davises and their counsel, Brown. On appeal, Brown continues to represent the Davises and argues on their behalf that the trial court erred in concluding that sanctionable conduct warranted a fee award pursuant to OCGA § 9-15-14(b). However, Brown has also filed a separate appeal -- in which she is represented by her own counsel -- in which she challenges the award against her personally, asserting a due-process argument that is unique to her circumstances. We note in passing that such an arrangement potentially necessitates certain ethical considerations under the Georgia Rules of Professional Conduct. See Georgia Rules of Professional Conduct Rules 1.7(a), (b), and (c)(3).

"As a general rule, an award of attorney fees and expenses of litigation are not available to the prevailing party unless authorized by statute or contract." *Williams v. Williams*, 362 Ga. App. 839, 846(4) (870 SE2d 462) (2022) (citation modified). Pursuant to OCGA § 9-15-14(b), a trial court may assess fees if "it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]" As used in that statute, "'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." OCGA § 9-15-14(b). "For purposes of OCGA § 9-15-14, the relevant question is whether some authority arguably supported Plaintiffs' position." *Shoenthal*, 343 Ga. App. at 30 (citation modified). Again, we review such a claim for abuse of discretion. See *Chadwick*, 331 Ga. App. at 381(5).

(a) The trial court first faulted the Davises and their counsel for filing a motion to enforce settlement even though they knew "that no settlement agreement had been finalized."

23

As we have explained before, a settlement agreement -- like any other contract in this State -- becomes enforceable when "the parties meet at the same time, upon the same subject matter, and in the same sense" and where an offer is "accepted unequivocally and without variance of any sort." *Yim v. Carr*, 349 Ga. App. 892, 903(2) (827 SE2d 685) (2019). Here, as evidenced by the April 4 emails, the Davises, through counsel, offered to dismiss their claims against Schmitt in exchange for her agreement to dismiss her claims against the Davises "and to cooperate as a witness in the case against The Phoenix and, if necessary, against [the layperson assisting Schmitt]." Almost immediately, Schmitt responded to the offer, indicating that she would dismiss her claims against the Davises and "*cooperate as a witness*, in accordance with the facts alleged in her pleadings. She will of course tell the truth but will not place blame on [the layperson] *because she has no knowledge as to [his] actions*." (Emphasis supplied.)

As the Davises correctly argued in their motion to enforce, a settlement need not be "finalized" or signed to be enforceable; a collection of writings by the parties' attorneys establishing the terms of an agreement may suffice. See *Tidwell v. White*, 220 Ga. App. 415, 417(2) (469 SE2d 258) (1996). Further, while Schmitt argued below that

she had not accepted the Davises' offer "unequivocally and without variance" -- because, she says, she responded that she would not place the blame on the layperson assisting her with the sale -- reasonable minds could disagree as to whether her response was, in fact, an acceptance. As an initial matter, Schmitt was only asked to testify against the layperson "if necessary," and there is no indication that such a condition precedent had been realized. Further, although it is true that Schmitt's response to the Davises' offer reflects that she would not "place blame" on the layperson in question, she *also* indicated that she would "cooperate as a witness" and testify "truthfully." Given the uncertainty as to her need to testify and the ambiguity in Schmitt's response, it was at least arguable that a settlement agreement had been reached between the parties, and the Davises' motion to enforce settlement did not lack substantial justification. Cf. *Pourreza v. Teel Appraisals & Advisory*, 273 Ga. App. 880, 883 (616 SE2d 108) (2005) (acceptance of essential terms of settlement created binding agreement between parties despite the fact that acceptance contained precatory language). Because "some authority arguably supported Plaintiffs' position," *Shoenthal*, 343 Ga. App. at 30 (citation modified), the trial court abused its

discretion in awarding attorney fees based on the Davises' attempt to enforce the alleged settlement agreement.

(b) The trial court also faulted the Davises for filing an "untimely motion to extend the time to file an (already overdue) response to Schmitt's motion for summary judgment." However, the trial court's conclusion is not supported by the record. As an initial matter, the filing was not untimely. As explained above, Schmitt and the Davises filed a joint stipulation allowing the Davises until August 28, 2023, to respond to Schmitt's motion for summary judgment. The motion for an additional 14 days in which to respond to Schmitt's summary judgment filing was filed on August 24, 2023, several days before the agreed-upon deadline.

Moreover, the Davises' motion did not lack substantial justification. At the time of the filing, not only had the Davises moved to enforce the rudimentary settlement agreement between the parties -- which would have rendered moot the pending motion for summary judgment -- but both the Davises and a separate defendant had jointly moved the trial court to extend discovery for *all parties, including Schmitt*, which, if granted, could have arguably rendered Schmitt's motion for summary judgment premature. Under these circumstances, the record does not support the trial

court's conclusion that this filing lacked substantial justification -- or was merely intended to delay the proceedings -- and, thus, the trial court's conclusion was erroneous.[6]

8. Our holding in Division 7 renders moot the remaining claim -- asserted by both the Davises and Brown -- that the fee award in this case is an impermissible "lump sum award," as well as Brown's separate claim that she received insufficient notice to be personally liable for the fee award.

*Judgment affirmed in part and reversed in part in Case Nos. A25A1540, A25A1541, and A25A1542. McFadden, P. J., and Hodges, J., concur.*

---

[6] In passing, the trial court also faulted the Davises for "seeking to strike the pending summary judgment motion." The Davises, however, made no such motion; instead, in the final sentence of their motion to withdraw admissions, the Davises asserted, in substance, that Schmitt's motion for summary judgment should be denied if their request to withdraw their admissions was granted because the summary judgment was based, in large part, on their admissions. This argument was part-and-parcel of the Davises' attempt to move to withdraw their admissions, a litigation decision that the trial court did not conclude was lacking substantial justification.